**GETCHELL MINE, Inc. v.
UNITED STATES.**

No. 12329.

United States Court of Appeals
Ninth Circuit.

May 4, 1950.

---

988

Wm. Woodburn, Wm. J. Forman, Wm. K. Woodburn and John P. Thatcher, Reno, Nevada, for appellant.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Helen Goodner, John A. Rees and Irving I. Axelrad, Sp. Assts. to Atty. Gen., Miles N. Pike, U. S. Atty., Bruce R. Thompson, Asst. U. S. Atty., Reno, Nevada, for appellee.

Before STEPHENS, HEALY and POPE, Circuit Judges.

POPE, Circuit Judge.

The question upon this appeal is the appellant's liability for federal transportation tax under Internal Revenue Code, § 3475 (a),[1] imposing a tax upon the amount paid "for the transportation * * * of property * * * from one point in the United States to another".

Appellant was engaged in operating a mining property in Humboldt County, Ne-

---

1. 26 U.S.C.A. § 3475 (a): "(a) Tax. There shall be imposed upon the amount paid within the United States after the effective date of this section for the transportation, on or after such effective date, of property by rail, motor vehicle, water, or air from one point in the United States to another, a tax equal to 3 per centum of the amount so paid, except that, in the case of coal, the rate of tax shall be 4 cents per short ton. Such tax shall apply only to amounts paid to a person engaged in the business of transporting property for hire, including amounts paid to a freight forwarder, express company, or similar person, but not including amounts paid by a freight forwarder, express company, or similar person for transportation with respect to which a tax has previously been paid under this section. In the case of property transported from a point without the United States to a point within the United States the tax shall apply to the amount paid within the United States for that part of the transportation which takes place within the United States. The tax on the transportation of coal shall not apply to the transportation of coal with respect to which there has been a previous taxable transportation."

vada. Appellant also operated a mill, and the ores, after removal to the surface from underground workings, were transported to the mill for treatment there. Transportation was by Dodge Construction, Inc., a Nevada corporation, which was an independent contractor, with which appellant contracted for the transportation of the ores, by truck, from mine to mill, paying sums ranging from 25¢ to $1 per cubic yard, depending on the distance the ores were hauled, which varied from 300 feet to 7 miles.

The Commissioner determined a tax to be due upon the sum paid by appellant for the transportation. The tax was paid, and appellant's claim for refund was denied. This action was brought to recover the amount paid. The facts were stipulated. The court's findings and conclusions are reported in full in 83 F.Supp. 774.

 The question raised on this appeal stems from the fact that appellant operated both the mine and the mill; and the hauling was all done over private roads built and maintained by appellant on its own land, except that some of the hauling was over a road built and maintained by appellant across one section of land the title to which was still in the United States. Appellant contends that the hauling thus contracted for was merely a part of appellant's mining operations, and therefore Dodge Construction, Inc., was not engaged in the business of transporting property for hire, within the meaning of the Act. It further urges that the movement of the ores from mine to mill over private roads, with mine, mill and roads all on appellant's property, was not the sort of transportation "from one point in the United States to another", contemplated by the Act.

The Act does not seem to contain any reference to the exception which appellant seeks to read into it. The Dodge Corporation was an independent contractor, and therefore would appear to be a "person engaged in the business of transporting property for hire".[2] The ore dumps at the mine portals, where the trucks were loaded, and the mill where the trucks were unloaded, would seem each to be a separate "point in the United States", if those words be given their apparent, natural meaning. Nor do we find anything in the Treasury Regulations which suggests that the tax shoud not apply under the circumstances here presented.

 Appellant argues that since the transportation here was from one unit of a business producing gold and tungsten, to another unit of the same business, it was merely incidental to the business of production of gold and tungsten concentrates, and not a part of its transportation to market, and hence not within the purview of Section 3475(a). It cites Alexander v. Carter Oil Co., 10 Cir., 53 F.2d 964, and Jones v. Continental Oil Co., 10 Cir., 141 F.2d 923 both having to do with the tax imposed by Section 3460 of the Internal Revenue Code upon the transportation of crude oil by pipeline. In the first case the oil company piped the oil from its producing leases to storage tanks, located from 4 to 12 miles away. In the second case the oil company piped the oil from producing leases in two fields to a stabilization plant centrally located about one and one-half miles from the farthest well. At this plant hydrocarbon gases were removed and saved. The decision in the Jones case that the tax did not apply was grounded upon a Treasury regulation which made transportation by a private owner taxable "whenever the movement is substantially similar to movements which pipe-line carriers usually undertake and perform, *if such movement is not merely local or incidental to the business of producing or refining oil.*" (Emphasis supplied.) The court held that "The Congress has impliedly approved this administrative definition and interpretation of the Act by repeated reenactments without material change." [141 F.2d 925] A similar Treasury decision was held controlling in the Alexander case.

The absence of any similar qualifying or excepting language in the regulation

---

**2.** The Act provides: "Such tax shall apply only to amounts paid to a person engaged in the business of transporting property for hire ⁕ ⁕ ⁕".

here applicable not only distinguishes the cases cited, but tends to indicate an administrative construction of section 3475(a) as not warranting an exception for transportation "incidental to production of metal concentrates".[3]

■ The Code Section has been amended since the regulations were adopted, Nov. 4, 1943, 57 Stat. 585; Feb. 25, 1944, 58 Stat. 65, and Dec. 29, 1945, 59 Stat. 671; but all amendments made were without significance with respect to the present problem. This treatment of the statute gave the regulations as written added sanction. Brewster v. Gage, 280 U.S. 327, 337, 50 S.Ct. 115, 74 L.Ed. 457; Commissioner of Internal Revenue v. Wheeler, 324 U.S. 542, 547, 65 S.Ct. 799, 89 L.Ed. 1166.

Appellant places much emphasis upon the regulation relating to the tax on transportation of coal which is set up in the same section 3475(a). The tax on coal is 4 cents per short ton. The last sentence in the section provides: "The tax on the transportation of coal shall not apply to the transportation of coal with respect to which there has been a previous taxable transportation". Such a provision, coupled with the fact that the tax on coal was a flat amount per ton, and not a percent of amounts paid, made it appropriate to adopt the regulation 143.13(b) which recites, concerning the tax on transportation of coal: "except that an amount paid for the transportation of coal from the mine to preparation plant as defined in section 143.1(g) is not taxable, but the tax attach-

es to the first subsequent transportation for hire of the coal."

Appellant says: "No more reason exists for the taxation of transportation of raw ores from a mine to a mill all located on the same premises than exists in the taxation of the movement of coal from the mine to a preparation plant."

However cogent such an argument might be when addressed to Congress, we cannot entertain it, for the language of the section appears to us to be too plain to permit the implication of any exception in this case. The fact that the section in question, and the regulations thereunder, deal with coal in a different manner than with other property, suggests that the application of the tax was intended to be different in each case. Transportation between plants in the same business enterprise is so common that it could not have been overlooked when the Act was passed and successively amended. Appellant's operations were not substantially different from those of concerns who contract for transportation from factory to assembly plant, from logging camp to sawmill, from stock yards to packing plant, or from mine to smelter. Had it been intended that the special regulation for coal be extended to appellant's operations, we believe Congress would have said so.

■ Appellant argues that the word "point", means the same as "place", and that since the whole enterprise of appellant, the mining, milling and hauling, were conducted upon its own ground, which was

3. "Treasury Regulations 113 (1943 Ed.) Sec. 143.1 (d): Transportation.—The term 'transportation' as used herein means the movement of property by a person engaged in the business of transporting property for hire, including interstate, intra-state, and intra-city or other local movements, as well as towing, ferrying, switching, etc. In general, it includes accessorial services furnished in connection with the transportation movement, such as loading, unloading, blocking and staking, elevation, transfer in transit, ventilation, refrigeration, icing, storage, demurrage, lighterage, trimming of cargo in vessels, wharfage, handling, feeding and watering live stock, and similar services and facilities."

"Sec. 143.13 Application of Tax.—(a) In general. The tax is payable by the person making the taxable transportation payment and is collectible by the person receiving such payment. (See section 143.50.)"

\* \* \* \* \*

"The tax applies to any payment, not specifically exempted, for the transportation of property, made to a person engaged in the business of transporting property for hire, including a payment made by one such person to another, but not including an amount paid by a carrier, a freight forwarder, express company, or similar person for transportation with respect to which a tax is payable to such person."

a single "place", the transportation was not "from one point in the United States to another".

We think section 3475(a) is not susceptible of such a construction, and that the hauling here was from point to point within the meaning of the Act. The case of Lyle v. United States, D.C., 76 F.Supp. 787, upon which reliance is had, held no more than that the use of trucks in grading an airfield, where the trucks were used to haul earth from a power shovel to dumps and fills, was not a use for transportation under the Act. We regard it as not apposite here. The decisions of certain state courts holding that the forbidden transportation under State Prohibition acts did not include the removal of liquor within a single building or across the premises of a single owner are expressions of the policy of those acts not to make unlawful the consuming of liquor within the home, or upon the user's own premises. We think those cases not persuasive in respect to the question now before us.

In its reply brief appellant argues that the stipulated facts show that Dodge Construction, Inc. was engaged in mining. This, it says, is disclosed by the stipulation that Dodge "agreed to remove, by the use of power shovels, gold and tungsten ores from the mining properties operated by plaintiff and transport the same by truck", etc. Says appellant: "In ordinary mining parlance, the removal of ores from mining properties, as found by the Court, means the separation of the ores by power shovels from the earth in which they are contained, which is basically a mining operation". Apparently appellant would have us regard this as some sort of strip mining operation.

We think the stipulation shows otherwise. The exhibits attached to the stipulation, and to the findings show that a portion of the ore was "sulphide ore". And the stipulation recites that "in the course of its mining operations, plaintiff extracts and moves tungsten and gold ores from natural deposits in the earth to surface ground". It is thus clear that the mining was ordinary quartz mining, from underground

workings, and that the loading was from ore dumps. The regulations recite that "transportation" includes "loading". Footnote 3 supra. In any event, Bridge Auto Renting Corporation v. Pedrick, 2 Cir., 174 F.2d 733, 738, is authority for the proposition that even if non-taxable services were included "if the tax applies to any part of the receipts here in question, it applies to them in their entirety".

The judgment is affirmed.