**EDWARD H. ELLIS & SONS, Inc., v. UNITED STATES.**

Civ. A. No. 285–49.

United States District Court
D. New Jersey.

July 12, 1950.

---

Samuel P. Orlando, Camden, N. J., Chester C. Hilinski, Philadelphia, Pa., for plaintiff.

Theron Lamar Caudle, Asst. Atty. Gen., Washington, D. C., Andrew D. Sharpe, Lyle M. Turner, Sp. Assts. to the Atty. Gen., Washington, D. C., Alfred E. Modarelli, U. S. Atty., Newark, N. J., Grover C. Richman, Jr., Asst. U. S. Atty., Camden, N. J., for defendant.

MADDEN, District Judge.

This matter is brought on by motions for summary judgment by both plaintiff and defendant, and based upon the pleadings and affidavits filed herein.

The Court finds no serious dispute of the facts of the case, which are as follows.

Plaintiff, Edward H. Ellis & Sons, Inc., hereinafter referred to as Ellis, is a corporation of New Jersey. On or about May 27, 1947, Ellis entered into a contract with The Texas Company, hereinafter referred to as Texas, providing that Ellis was to excavate, grade and do such other construction work as might be required to level and grade a large tract of land owned by Texas in Gloucester County, New Jersey, on which Texas proposed to construct a large refinery and storage plant for gasoline and oil. In furtherance of this contract with Texas, Ellis entered into an oral subcontract with one Ralph J. Krantz, hereinafter referred to as Krantz, also a citizen of New Jersey, under which Krantz agreed to furnish Ellis dump trucks with drivers to help do the leveling and grading work. Trucks furnished by Krantz to Ellis were used to move earth from a point in the tract belonging to Texas, where it was being excavated, to a point in the same tract, where it was needed as fill. The trucks received earth from the grading shovels and moved it distances ranging from approximately 300 feet to one mile. Some of the earth was moved by Ellis' other equipment, such as, bulldozers, carryalls, etc., where the distances to move the earth was less. All of these operations took place within the confines of Texas' proposed plant.

Ellis' contract with Krantz provided that Ellis would pay Krantz at the rate of $3.50 per hour or $28 a day for trucks having a capacity of 4 cubic yards, and at the rate of $4.50 per hour or $36 a day for trucks having a capacity of 6 cubic yards. Under these rates Krantz supplied both trucks and drivers; the drivers being employees of Krantz. The drivers would be directed in their operations by Ellis or its subordinates. As stated by Krantz in his affidavit submitted by the Government: "I had nothing to do with any of the construction activities carried on by Edward H. Ellis & Sons, Inc., other than furnishing of the men and trucks for their disposition."

It is the amounts paid by Ellis to Krantz for the services hereinbefore set forth that form the basis of the tax, in the sum of $1,772.67, here in dispute. The statutory conditions precedent to bringing the action have all been complied with and the sole issue now is whether the taxes may be recovered by Ellis.

The Act [1] under which the Government seeks to maintain its position is in substance a tax imposed upon the amount paid —"for the transportation * * * of property by rail, motor vehicle, water, or air from one point in the United States to another." It is admitted that Krantz was a person in other respects engaged in the business of transporting property for hire so that the other provisions of the statute become immaterial.

The real question for consideration is, does the operation here under consideration constitute the transportation of property for hire from one point in the United States to another within the meaning of Congress? Since the original enactment of the provision in question has been in effect, Congress has amended the Internal Revenue Code on several occasions without changing the applicable provisions. It seems thereby Congress has given tacit recognition and sanction to the Treasury Regulations promulgated under the Internal Revenue Code and issued by the Commissioner regarding this Act. In those regulations, Treasury Regulations 113, 1943 Ed., Sec. 143.1, we find the following definitions:

"(d) Transportation—The term 'transportation' as used herein means the movement of property by a person engaged in the business of transporting property for hire, including interstate, intrastate, and intracity or other local movements, as well as towing, ferrying, switching, etc. In general it includes accessorial services furnished in connection with a transportation movement, such as loading, unloading, blocking and staking, elevation, transfer in transit, ventilation, refrigeration, icing, storage, demurrage, lighterage, trimming of cargo in vessels, wharfage, handling, feeding and watering live stock, and similar services and facilities.

"(e) Property—The term 'property' means any physical matter regardless of value over which the right of ownership or control may be exercised, including currency, documents, papers of all kinds, etc."

In considering this statute we find the case of Ohio River Sand Co. v. United States, D.C.W.D.Ky., 60 F.Supp. 563, decided May 25, 1945. There the plaintiff corporation furnished a tug motorboat to an oil company for the purpose of towing empty or loaded barges at a daily rental which was payable regardless of whether the boat was used or not. Judge Miller said, in 60 F.Supp. at page 565:

"The compensation was not based upon mileage, number of trips made, number of barges towed, or the number of days or hours in any day that the towboat was actually in use. * * *

"The court is accordingly of the opinion that under the contract in question the plaintiff was not 'engaged in the business of transporting property for hire.'"

And in Williams v. United States, D.C. Ariz., 72 F.Supp. 300, decided March 17, 1947, it was held that the use of rented trucks was incidental to construction operations of contractor plaintiffs and not transportation of property within the meaning of the Act.

---

[1]. A. Statute, Section 3475(a) of the Internal Revenue Code, 26 U.S.C.A. § 3475(a), "(a) Tax. There shall be imposed upon the amount paid within the United States after the effective date of this section for the transportation, on or after such effective date, of property by rail, motor vehicle, water, or air from one point in the United States to another, a tax equal to 3 per centum of the amount so paid, except that, in the case of coal, the rate of tax shall be 4 cents per short ton. Such tax shall apply only to amounts paid to a person engaged in the business of transporting property for hire, including amounts paid to a freight forwarder, express company, or similar person, but not including amounts paid by a freight forwarder, express company, or similar person for transportation with respect to which a tax has previously been paid under this section. In the case of property transported from a point without the United States to a point within the United States the tax shall apply to the amount paid within the United States for that part of the transportation which takes place within the United States. The tax on the transportation of coal shall not apply to the transportation of coal with respect to which there has been a previous taxable transportation."

The case of Lyle v. United States, D.C. N.D.Ga., 76 F.Supp. 787, decided February 2, 1948, is on all fours with the case under consideration. There Lyle, the plaintiff engaged a subcontractor to use the trucks of the subcontractor to receive earth from the grading shovel and to move this earth from the shovel to the dump or fill, all operations being within the boundaries of the airport under construction by Lyle, and all such operations being part of and incidental to the leveling, grading and construction of the airport. The drivers of the trucks were employed and paid by the subcontractor. Lyle paid the subcontractor at the rate of $2.75 per truck, per hour for the use of the trucks and drivers. There the Court said, in 76 F.Supp. at page 788: " * * * Neither the statute, nor the regulations issued pursuant thereto, either expressly or by fair implication, evidence any applicability to transactions of the kind now under consideration, but on the contrary, evidence intent to subject to tax liability payments made for transportation in the manner and by the means specified as the language employed is commonly understood in the light of present day transportation practices and custom. The hauling of dirt by dump trucks hired upon an hourly basis, which are used exclusively in the leveling of an airfield, and within its confines only, presents none of the elements of transportation as that term is generally understood."

Counsel for the Government frankly does not attempt to distinguish the Lyle case but instead argues that the reasoning is unsound and should not be followed. However, the Court of Appeals for the Second Circuit in Bridge Auto Renting v. Pedrick, 174 F.2d 733, decided May 10, 1949, had this to say about the Lyle case in a split decision, in 174 F.2d at page 738: "Lyle v. United States, D.C.N.D.Ga., 76 F.Supp. 787, dealt only with the removal of dirt by a subcontractor within the limits of an airfield under construction and such 'transportation' seems plainly outside the statute and regulations."

In its consideration of the Bridge v. Pedrick case, supra, the Second Circuit seemed to find important the manner of payment between the parties, for it said in 174 F.2d at page 734: "The rent reserved was usually a fixed amount per week for a stated average minimum weekly mileage, plus a stated amount for each mile in excess of the minimum."

In the present case, Ellis had to pay rent regardless of how far the trucks traveled, how many loads they carried, or, if for some reason, outside the fault of Krantz, the truck or trucks did nothing.

The Court finds another case to be quite similar to the case at bar in Continental Oil Co. v. Jones, D.C.W.D.Oklahoma, 92 F.Supp. 927, where Judge Chandler, in the conclusions of law, said: "The operation of the dump trucks did not constitute transportation of property from one point in the United States to another, within the meaning of Section 3475 of the Internal Revenue Code, and payment for the use of said dump trucks hired on an hourly basis and used only within the confines of plaintiff's refinery area, and as an incident of the construction of water reservoirs and the filling and leveling of the immediate area, was not a payment for the transportation of property, within the terms of the statutory provision referred to. The hauling and dumping of dirt by the dump trucks, under the circumstances in this case, constitutes or is an incident of construction, and presents none of the elements of transportation as that term is generally understood."

Government counsel, in his brief, relies heavily upon Getchell Mine, Inc., v. United States, D.C.Nev., 83 F.Supp. 774. There the Court sustained the imposition of the tax under the Act in question under the following circumstances: "Getchell was engaged in operating a mining property in Humboldt County, Nevada. Getchell also operated a mill, and the ores, after removal to the surface from underground workings, were transported to the mill for treatment there. Transportation was by Dodge Construction, Inc., a Nevada corporation, which was an independent contractor, with which Getchell contracted for the transportation of the ores, by truck, from mine to mill, paying sums ranging from 25¢ to $1.00 per cubic yard, depend-

ing on the distance the ores were hauled, which varied from 300 feet to 7 miles."

You will note that there is quite a distinction with a difference in the facts of that case as compared with the facts of the case under consideration here. For example, there the ore being transported was being taken to a mill for treatment and ultimate processing into commerce; here the earth was merely being moved from one portion of the property to another portion of the same property. Another example, there the payment to the person moving the ore was so much per cubic yard, depending upon the distance it moved, which varied from 300 feet to 7 miles; here Ellis paid rent for the trucks and drivers per hour or per day, the amount depending on the size of the truck. In addition, the Court of Appeals for the Ninth Circuit, 181 F.2d 987, 991, in sustaining the District Court in an opinion filed May 4, 1950, had this to say about the Lyle case: "The case of Lyle v. United States, D.C., 75 F.Supp. 787, upon which reliance is had, held no more than that the use of trucks in grading an airfield, where the trucks were used to haul earth from a power shovel to dumps and fills, was not a use for transportation under the Act. *We regard it as not apposite here.*" (Emphasis supplied.)

Counsel for the Government, in seeking to sustain the tax herein, says in its brief, at page 14: "The statute does not distinguish between real and personal property and if it is possible to move real property from one place to another it is just as subject to a tax as if it were personalty."

It must have been in counsel's mind, as it was in the mind of the Court, that here the real property was owned by Texas and Ellis was engaged to grade and level such real property. The character of the property could not be changed from real to personal without the authorization or intention of the owner, Texas. But the Court is extremely reluctant to go so far, as Government counsel desires, to say that the Congress of this Country, in its infinite wisdom, would place a tax upon an impossibility, i. e., moving real property.

Therefore, following the precedents hereinbefore cited, I find that the transactions existing in the present case do not constitute transportation of property from one point in the United States to another within the meaning of Sec. 3475 of the Internal Revenue Code, and the payment for rental of the trucks herein was not payment for the transportation of property within the terms of the statute under consideration.

Judgment will accordingly be for the plaintiff. Counsel are directed to submit proposed findings of fact and conclusions of law.