**EDWARD H. ELLIS & SONS, Inc. v. UNITED STATES.**

No. 10364.

United States Court of Appeals
Third Circuit.

Argued Feb. 21, 1951.

Filed March 13, 1951.

Fred E. Youngman, Washington, D. C., Grover C. Richman Jr., U. S. Atty. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, Special Asst. to the Atty. Gen., on the brief), for appellant.

Chester C. Hilinski, Philadelphia, Pa., Barnes, Dechert, Price, Myers & Clark, Philadelphia, Pa. (Samuel P. Orlando, Camden, N. J., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

On cross motions for summary judgment the court below decided that the taxpayer was entitled to recover transportation taxes assessed under Section 3475 of the Internal Revenue Code, as added by Section 620(a) of the Revenue Act of 1942, Chapter 619, 56 Stat. 798, 979, 26 U.S.C. 1946 ed., § 3475. The Government appeals.

During the period with which we are here concerned, the pertinent portion of the taxing statute read: "(a) Tax.—There shall be imposed upon the amount paid within the United States after the effective date of this section for the transportation, on or after such effective date, of property by rail, motor vehicle, water, or air from one point in the United States to another, a tax equal to 3 per centum of the amount so paid, * * *. Such tax shall apply only to amounts paid to a person engaged in the business of transporting property for hire, including amounts paid to a freight forwarder, express company, or similar person, * * *."[1]

Appellee, a general contractor, agreed with the Texaco Company that it would clear, level and grade a tract of land owned by the Texaco Company in West Deptford Township, New Jersey, on which the Texaco Company proposed to construct a large oil refinery and storage plant.

In connection with the clearing, leveling and grading of the tract, appellee entered into an oral subcontract with one Krantz whereby the latter was to furnish appellee with trucks and drivers to assist in that project. Krantz was to be paid at an hourly or daily rate per truck. His trucks were used exclusively within the boundaries of the tract. They moved earth from points in the area where it was being excavated to points in the same area where it was needed as fill.[2] The trucks were loaded by grading shovels. They carried the earth distances varying from three hundred feet to one mile. Where the distance from an excavation to a place which was to be filled was less, appellee itself moved the earth by means of men with hand shovels, bulldozers, carry-alls or otherwise. Krantz, admittedly, is in the trucking business and within the statutory definition of "* * * a person engaged in the business of transporting property for hire * * *."

The principal finding of the District Judge was "* * * that the transactions existing in the present case do not constitute transportation of property from one point in the United States to another within the meaning of Sec. 3475 of the Internal Revenue Code * * *." [91 F. Supp. 880, 884] On this basic proposition we must agree with the lower court.

■ Prior to detailing our reasons for such agreement there are two minor problems in the case which should be disposed of. The first of these is whether Krantz, under his subcontract, merely entered into a bare rental of his trucks, as appellee suggests. If this be true then the statute is inapplicable because the amount paid Krantz by appellee would have been simply for the hiring of the trucks. The handling of the earth by those trucks would have been the act of the appellee itself. In that situation the money paid by appellee to Krantz would not have been for the transportation set out in Section 3475. However, we do not think that the matter can be so resolved. Krantz furnished the trucks with his own drivers who were his employees, paid by him. Those drivers by means of their trucks conveyed the earth as directed by Ellis. That Krantz received a flat rate for this is of no great importance. His contract was oral but unless there was something contained therein which does not appear, he would not be excused from failing to perform it in a reasonable, workmanlike manner. We are not here dealing with a tort liability problem but solely with the question of appellee's responsibility under Section 3475. It seems perfectly clear that the money Krantz received was not just for the rental of his trucks but "* * * for performing the service of carrying the property". Bridge Auto Renting Corporation v. Pedrick, 2 Cir., 174 F.2d 733, 737. And see M.T. 9, 1943 C.B. 1159. Cf. John J. Casale, Inc., v. United

1. Amended by Sec. 607(b), Revenue Act of 1950. Amendment not here pertinent. See 26 U.S.C.A. § 3475(a).

2. For the first three months of the subcontract Krantz moved stumps and other so-called "waste material". That material was used to fill low spots on the land with the points of disposal designated by appellee. The Commissioner held that this part of the Krantz subcontract also came within Section 3475.

States, 114 Ct.Cl. 599, 86 F.Supp. 167, certiorari denied 338 U.S. 954, 70 S.Ct. 492.

■ The other minor query is whether the earth carried by the Krantz trucks was "property" as intended by the statute. We think it was and if the facts really pointed to its "transportation" we would not have the slightest difficulty in upholding the tax.[3] But it is on that vital issue of whether the moving of the earth, under the circumstances before us, constituted "transportation * * * from one point in the United States to another, * * *" as contemplated by Section 3475 we differ from appellant. The operation by the Krantz trucks was an integral part of the construction of the oil company's plant. It concerned the clearing, grading and leveling of the premises for that sole purpose. It did not concern transportation as that term is commonly employed. We are entitled to consider that the use of the word in the Code was confined to its ordinary sense.[4] In addition, the definition of "transportation" as given in the companion Treasury Regulations helps show that the inclusion of this type of leveling and filling work was never intended. That definition as found in Section 143.1(d) of Regulation 113 reads: "The term 'transportation' as used herein means the movement of property by a person engaged in the business of transporting property for hire, including interstate, intrastate and intra-city or other local movements, as well as towing, ferrying, switching, etc. In general, it includes accessorial services furnished in connection with a transportation movement, such as loading, unloading, blocking and staking, elevation, transfer in transit, ventilation, refrigeration, icing, storage, demurrage, lighterage, trimming of cargo in vessels, wharfage, handling, feeding and watering livestock, and similar services and facilities."

The kind of operation involved in this appeal not only is not mentioned in the above Regulations but it is in nowise connected with the items there listed which quite obviously bear an immediately acceptable relationship to transportation as understood generally.

In Lyle v. United States, D.C.N.D.Ga., 76 F.Supp. 787, 788,[5] the court held that, "The hauling of dirt by dump trucks hired upon an hourly basis, which are used exclusively in the leveling of an airfield, and within its confines only, presents none of the elements of transportation as that term is generally understood." Speaking of that case, Judge Chase, in his Bridge Auto Renting opinion supra, 174 F.2d at page 738, said that it "* * * dealt only with the removal of dirt by a subcontractor within the limits of an airfield under construction and such 'transportation' seems plainly outside the statute and regulations". Cf. Williams v. United States, D.C.Ariz., 72 F.Supp. 300, 301; Continental Oil Co. v. Jones, D.C.W.D.Okl., 92 F.Supp. 927, 929; Ohio River Sand Co. v. United States, D.C.W.D.Ky., 60 F.Supp. 563 (Government's appeal to the United States Court of Appeals, 6 Cir., dismissed October 3, 1945).

Getchell Mine, Inc., v. United States, 9 Cir., 181 F.2d 987 is offered by appellant as supporting its view that the instant operation is taxable. The circumstances of that case differ materially from the matter before us. There, though the particular movement of the ore was confined to the taxpayer's land, it was a movement of ore which had already been mined to a mill where the ore was refined and thereafter disposed of commercially. As Judge Madden, in his opinion below,[6] points out, the court in the Getchell decision, 181 F.2d at page 991, after stating the facts in the Lyle case, supra, did not regard that opinion as "apposite".

3. Section 143.1(e) Treasury Regulations defines "property" for the purposes of the Act as "any physical matter regardless of value over which the right of ownership or control may be exercised, * * *."

4. Gould v. Gould, 245 U.S. 151, 153, 38 S.Ct. 53, 62 L.Ed. 211. And see Shwab

v. Doyle, 258 U.S. 529, 537, 42 S.Ct. 391, 66 L.Ed. 747.

5. Government's appeal dismissed May 5, 1948 on appellant's motion.

6. Ellis v. United States, D.C., 91 F.Supp. 880, 884.

This movement of earth, an important element in the initial steps of the erection of the Texaco plant, namely, the clearing, grading and leveling of the tract, fails to meet the every day usage of the term transportation. It fails in evidencing any kinship to the various meanings of the word given in the Treasury Regulations supplementing Section 3475. It fails of any support at all in the reported cases under Section 3475.

The judgment of the District Court will be affirmed.