CASTLE SHANNON COAL CORP. v.
UNITED STATES.

Civ. A. No. 8828.

United States District Court
W. D. Pennsylvania.

June 25, 1951.

William J. Kenney, Harton S. Semple, and Rose, Eichenauer, Stewart & Rose, all of Pittsburgh, Pa., for plaintiff.

Andrew F. Oehmann, Sp. Asst. to Atty. Gen., Edward C. Boyle, U. S. Atty., Pittsburgh, Pa., for defendant.

CLARY, District Judge.

This is an action by the plaintiff, Castle Shannon Coal Corporation, to recover taxes assessed and paid under the provisions of Section 3475 of the Internal Revenue Code, 26 U.S.C.A. § 3475, for the transportation of property for the period 1942 to 1947 inclusive. The facts in the main are undisputed and the following narrative may be taken as the general findings of fact which will be supplemented hereinafter by special findings of fact.

Plaintiff at the material times herein was the owner and operator of a coal mine located at Coverdale in Bethel Township, Allegheny County, Pennsylvania. Coal was taken from a seam interlaid with slate, clay and other foreign substances. In the course of the operation of the mine substantial quantities of the foreign substances were brought to the surface along with the coal. This foreign matter was separated from the coal at the mine tipple by means of shaker screens and various other devices and the impurities were diverted into a chute leading to a storage bin. From the bin the slate and impurities were hauled by motor truck to the mine dump located entirely on the property of the plaintiff immediately adjacent to the tipple. The dump commenced about 25 yards from the tipple and extended several hundred yards and covered an area of about 20 acres. It was unnecessary to use any public road or to cross any other person's land in order to reach the dump.

Prior to the period involved in this action, the plaintiff moved the refuse from the tipple to the dump by means of an electric lorry. During the period in question the refuse was hauled from the tipple to various points on the dump by motor truck. This hauling was done under written contracts by one Frank Aiman, except for a short period of time when the work was taken over and performed under the same terms and conditions by Sam Pandolfo. Both of these men were in the trucking business. The details of operation were as follows. Under the terms of the contract Aiman agreed to and did haul from the tipple the impurities separated there from the coal and deposited them on the mine dump. For this he was paid at a specified rate per hour for the services of each truck and driver. This compensation was paid regardless of the number of trips made from the tipple to the dump. Since the mines were in operation three shifts a day during most of the period involved, the trucks were likewise operating three shifts. They handled an average of about five hundred tons of waste material each shift and each haul from the tipple to the dump averaged about four minutes. The contracts for the earlier years provided for the dumping of the refuse on the mine dump, and the contract for the last year in question, 1947, was worded to appear to give him the privilege of doing what he had theretofore been required to do, deposit it on the mine dump. Nevertheless, as a practical matter and in the course of operations under the latter contract, it was necessary for him to deposit the refuse on the mine dump of the plaintiff in order to keep the bins clear at the tipple and to permit continuous mining operations. Failure to keep the bins clear would have resulted in stoppage of the mine. There was no supervision by the plaintiff as to where the refuse was dumped, though the contracts provided that plaintiff's foreman would direct and supervise. The place at which the refuse was actually deposited at any particular time was determined in a large degree by practical considerations such as the direction of the wind which blew smoke from the burning dump and interfered with visibility. Aiman and his drivers according to existing conditions at the dump determined where the respective loads were to be placed. The trucks which were used were owned by Aiman and were purchased specifically for the performance of these contracts. They were never licensed for highway operation, bore no state license tags, nor were they inspected. Because of the severe nature of the work the useful life of a truck did not extend beyond one year.

They were completely worn out within the year and such parts as could not be salvaged were sold as junk. In addition to the trucks Aiman furnished his own drivers, provided all oil, gas and repairs, carried compensation insurance on the employees and paid unemployment taxes. His garage and place of business immediately adjoined the plaintiff's property. In fact, the property was purchased by Aiman from the plaintiff and the trucks were moved from one property to the other over an improvised road. Aiman always provided five trucks, two in constant operation and three as standby or undergoing repair. During the period involved Aiman from time to time removed some of the waste material to his own property for the purpose of fill but this was a negligible percentage of the material moved. Aiman was paid the agreed rate for two trucks per shift regardless of the amount of work done while the mine was in operation. The amount of taxes involved in this action, $3,761.36, represents 3% of the sums paid by the plaintiff to Frank Aiman and Sam Pandolfo for the work above described and was paid by the plaintiff to the Collector of Internal Revenue at Pittsburgh, Pennsylvania, on September 15, 1948 for the periods and in the amounts herein set forth:

| | | | |
|---|---|---|---|
| Period 12/1/42 to 1/1/43 | | $ | 42.74 |
| Calendar Year 1943 | | | 631.48 |
| " | " | 1944 | 858.59 |
| " | " | 1945 | 818.62 |
| " | " | 1946 | 684.75 |
| " | " | 1947 | 725.18 |
| | | | $3,761.36 |

On or about November 19, 1948 plaintiff filed proper claims for refund covering all of said payments and on June 15, 1949 said claims for refund were denied by the Commissioner of Internal Revenue and this action was instituted.

## Discussion

The question presented in this case is whether the above described operation constituted transportation of property by one engaged in that business within the meaning of Section 3475 of the Internal Revenue Code, 26 U.S.C. (1946 edition). I hold that it does not. The record in this case clearly establishes that the work here performed was incident to and an integral part of the mining of the coal. It did not concern transportation as that term is commonly employed. Much light is thrown upon the problem before me by the following language from the opinion of Judge McLaughlin in the case of Edward H. Ellis & Sons, Inc. v. United States, 3 Cir., 187 F. 2d 698, at page 700:

"* * * We are entitled to consider that the use of the word in the Code was confined to its ordinary sense. In addition, the definition of 'transportation' as given in the companion Treasury Regulations helps show that the inclusion of this type of leveling and filling work was never intended. That definition as found in Section 143.1(d) of Regulation 113 reads: 'The term "transportation" as used herein means the movement of property by a person engaged in the business of transporting property for hire, including interstate, intrastate and intra-city or other local movements, as well as towing, ferrying, switching, etc. In general, it includes accessorial services furnished in connection with a transportation movement, such as loading, unloading, blocking and staking, elevation, transfer in transit, ventilation, refrigeration, icing, storage, demurrage, lighterage, trimming of cargo in vessels, wharfage, handling, feeding and watering livestock, and similar services and facilities.'

"The kind of operation involved in this appeal not only is not mentioned in the above Regulations but it is in nowise connected with the items there listed which quite obviously bear an immediately acceptable relationship to transportation as understood generally."

Just as in the Ellis case, the leveling and filling was an integral part of the construction, so here the deposit of the waste material upon the mine dump was an integral part of the mining operation. Likewise, as in the Ellis case, this operation bears no relationship to transportation as understood generally.

The Government in this case urges strenuously the application of the holding in

Getchell Mine, Inc. v. United States, 9 Cir., 181 F.2d 987. In that case the taxpayer operated a mine for the production of gold and tungsten ore. A contract was entered into with an independent contractor to supply trucks and drivers to haul the ore from the mine portal to processing mills for varying charges based upon the length of the haul. The hauling operation was performed entirely on taxpayer's property. The Court there held the transaction to constitute a taxable transportation under Section 3475 of the Internal Revenue Code, 26 U.S.C.A. § 3475.

That case is readily distinguishable from the instant case. The Getchell case involved transportation of a raw material between two stages of its production, whereas, here the mining operation was not completed until the waste material was removed from the bins at the tipple to permit continued operation of the mine. I do not regard the present transaction as one constituting transportation of property from one point in the United States to another within the meaning of Section 3475 of the Internal Revenue Code, 26 U.S.C.A. § 3475. It was rather incident to and an integral part of the mining. I, therefore, make the following:

### Special Findings of Fact

1. The hauling of the waste material from the tipple to the dump upon the taxpayer's premises by Aiman and Pandolfo was not transportation of property from one point in the United States to another within the meaning of Section 3475 of the Internal Revenue Code, 26 U.S.C.A. § 3475.

2. Payments by the plaintiff herein for services performed by Aiman and Pandolfo were not payments for the transportation of property contemplated by the terms of the statute.

### Conclusions of Law

1. The hauling of the waste material from the tipple to the dump upon the taxpayer's premises by Aiman and Pandolfo did not constitute transportation of property from one point in the United States to another within the meaning of Section 3475 of the Internal Revenue Code, 26 U.S.C.A. § 3475.

2. Payments by the plaintiff herein for services performed by Aiman and Pandolfo did not constitute payments for the transportation of property contemplated by the terms of the statute.

3. Plaintiff complied with all the conditions precedent imposed by law or required by the regulations of the Treasury Department promulgated thereunder prior to the bringing of this action.

 4. Plaintiff is entitled to judgment for the amount of the payments made to the Collector of Internal Revenue at Pittsburgh, Pennsylvania, totalling $3,761.36, with interest, as provided by 26 U.S.C. § 3771.