### KERNS et al. v. UNITED STATES.
### No. 1111.

United States District Court
W. D. North Carolina, Asheville Division.
Dec. 11, 1952.

W. T. Joyner, W. T. Joyner, Jr., Raleigh, N. C., for plaintiff.

Thomas A. Uzzell, Jr., U. S. Dist. Atty., Asheville, N. C., for defendant.

WARLICK, District Judge.

This case was heard and is being determined on the pleadings originally filed, the stipulations made and certain explanatory evidence as offered by the plaintiffs. The action was instituted by Clyde Kerns and James Kerns, partners, doing business as Kerns Brothers Trucking Company, against the defendant, seeking to recover certain sums of money in the nature of transportation taxes alleged to have been erroneously and illegally collected.

The jurisdiction of this court is based on Paragraph (a)(1), Section 1346 of the Judicial Code, Title 28 U.S.C.A.

It is agreed that plaintiffs paid the taxes sought to be recovered, made application for refund, and that the statutory time has elapsed since demand was made and that this action is properly instituted.

The Superior Stone Company, a North Carolina corporation, owns and operates a number of rock quarries, and one among them is its plant at Kings Mountain, North Carolina. The plaintiffs are engaged exclusively in the transportation for hire and the truck rental business for the Superior Stone Company, and all of their trucks were used by the Superior Stone Company in the operation of its quarry at Kings Mountain, and additionally in the delivery of stone to its customers.

The process by which the Superior Stone Company manufactures its product is rather engaging, and certainly typifies the spirit of production in America. The first among the various steps in this production operation is to blast the stone from the face of the quarry pit by the use of explosives,—enough being set so that one

shooting ordinarily produces a sufficient amount of stone and rock to permit a continuous operation for approximately one week. These stones of various size blasted from the face of the pit are then scooped up by a large shovel and loaded onto special dump trucks. These trucks are the property of the plaintiffs. They are of a particular make and designed especially for heavy duty and are not ordinarily, except with special permission, used on the paved highways in North Carolina, since they are of an excessive width and weight. When loaded these dump trucks carry the stone to the primary rock crusher which is located within the quarry pit, at a distance varying over the years of operation from approximately 500 feet to $\frac{9}{10}$ of a mile from the face of the quarry.

On the stone being dumped into the primary crusher it is broken and crushed into smaller sizes so that it may thereafter be handled by the other crushers to which it is subsequently conveyed. A conveyor belt operating from a series of three other crushers is the means of transportation, and thereafter through these crushers the stone is broken and washed and finally made into the desired merchantable size. From this final process some of the stone is loaded directly onto railroad cars and transported to its destination. Some is loaded onto trucks for transportation by motor from the quarry to its destination and some for which there is no immediate sale, is loaded onto trucks and carried to stock piles in the quarry pit, to await future sales and transportation.

In order to carry on such described quarrying and production operations, motor vehicles must be obtained to effect and bring about the first transportation and the removal from the original blasting to the primary crusher, and that movement, through the medium of these trucks of the plaintiffs, under the statute, brings this question for decision.

This action arises under the Internal Revenue Law of the United States, particularly Section 3475(a) of the Internal Revenue Code, 26 U.S.C.A.

"(a) Tax. There shall be imposed upon the amount paid within or without the United States for the transportation of property by rail, motor vehicle, water, or air from one point in the United States to another, a tax equal to 3 per centum of the amount so paid, except that, in the case of coal, the rate of tax shall be 4 cents per short ton. Such tax shall apply only to amounts paid a person engaged in the business of transporting property for hire, including amounts paid to a freight forwarder, express company, or similar person, but not including amounts paid by a freight forwarder, express company, or similar person for transportation with respect to which a tax has previously been paid under this section. In the case of property transported from a point without the United States to a point within the United States the tax shall apply to the amount paid within the United States for that part of the transportation which takes place within the United States. The tax on the transportation of coal shall not apply to the transportation of coal with respect to which there has been a previous taxable transportation."

Two questions are involved:

(1) Is the above described movement of stone "transportation of property by * * * motor vehicle * * * from one point in the United States to another" within the meaning of the above section of the Internal Revenue Code, and

(2) Is the amount of taxes so paid "for the transportation of property" as is embraced in said statute.

It is stipulated that the amount heretofore paid by the plaintiffs as a tax of 3% amounts to $11,942.38. $3,400.70 of this amount represents taxes paid on the movement of stone from the final crushing process to the stock piles. Thus the amount of taxes paid and sought to be recovered with interest is not in controversy.

The contract between the plaintiffs and the Superior Stone Company Exhibit A, bearing date of January 10, 1946, constitutes the sole agreement between the parties and embraces the same terms and condi-

tions as did all prior contracts since contractual relations were instituted in 1940.

All of the trucks used in this hauling process, normally numbering five, under inquiry, were owned by the plaintiffs.

The drivers operating said trucks were employed by and were continuously on the payroll of the plaintiffs.

Plaintiffs were to service all trucks mechanically and gas, oil, tires, and all other necessary operating factors were to be furnished and paid for by the plaintiffs.

North Carolina workman's compensation insurance was carried on the drivers of the said trucks and was paid for by said Kerns Brothers. Social Security deductions were to be made by the plaintiffs. Liability insurance on the trucks owned by the plaintiffs was carried by them, thus insuring the property against any damage that might result. Plaintiffs likewise set the wage rate for the drivers and at all times during the periods under investigation and undertook to look out for their welfare and the wage scale set was paid by the plaintiffs. All permits, licenses, etc., made necessary to the operation of the trucks were secured and paid for by the plaintiffs, the owners thereof.

Plaintiffs had the sole right to hire and fire all of their drivers, however, if some one among the drivers was found to be unsatisfactory to the representative of the Superior Stone Company and he wished him discharged, as an employee, such wish of the Superior Stone Company was to be communicated to the plaintiffs, and plaintiffs, then, nothing else appearing, would discharge said employee, only from the Superior line of work.

Each day while the work was in progress the superintendent of the Stone Company would inform plaintiffs of the number of trucks required for that particular day's operation and plaintiff would furnish such number of trucks with drivers for each day as requested. The drivers of plaintiffs thus reporting with their trucks to the premises of the Stone Company would during the hours of labor on said premises be subject to the terms of the Stone Company with respect to the work to be done, the

material to be moved, the places where dumped, etc., and at the end of the day's work were to return to the place of business of the plaintiffs, and each would then become subject to the orders of the plaintiff company.

A record was kept by the Superior agents as to the number of hours each truck operated each day and payments were correspondingly made with respect to the hours operated.

Conveniently located and well constructed roads from the place of entrance and extending throughout the whole of the pit made it possible for vehicles to operate as is described and to engage in a continued operation.

The plaintiffs contend that the facts herein do not make for a transportation from one point in the United States to another and, (2) that they indicate only a rental of the trucks involved in this business.

With these contentions I am unable to agree.

I read the decisions differently. Certain it is that the statute, 26 U.S.C.A. § 3475 does not exempt from its application transportation incidental to production, and no interpretation exempting such transportation has been cited. In fact, transportation between plants in the same business enterprise and the conveyance of a commodity from one point to another in the manufacturing process is so common it would seem that it could hardly have been overlooked by the Congress when the Act was originally passed and later amended. Getchell Mine, Inc., v. United States, D.C., 83 F.Supp. 774, Id., 9 Cir., 181 F.2d 987.

The tax as was collected here is imposed upon the amount *paid* for transportation of property by rail, *motor vehicle,* etc. from one point in the United States to another; the tax applies only to the amount paid to a person engaged in the business of transporting property for hire.

Transportation, as used in this section, is defined by Treasury Regulations 113 Sec. 143.1(d) as the movement of property by a person engaged in the business of transporting property for hire, including interstate, intrastate and intra-city or other lo-

636

cal movements, and accessorial services furnished in connection with the transportation movement.

"Property" is likewise defined in such Treasury Regulations as any physical matter regardless of value over which the right of ownership or control may be exercised. Gulf Coast Towing Co. v. United States, 5 Cir., 196 F.2d 944.

In the absence of a showing that they are unreasonable Treasury Regulations are controlling and must be sustained unless plainly inconsistent with the Revenue statute. Commissioner v. Wheeler, 324 U.S. 542, 65 S.Ct. 799, 89 L.Ed. 1166; Commissioner v. South Texas Lumber Company, 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831.

It would seem that the facts in this case are almost identical with the facts in the Getchell case, supra, 181 F.2d 987, and I therefore conclude that there was (1) transportation of property (2) by motor vehicle (3) from one point in the United States to another, (4) payment therefor made in the United States by the taxpayer to (5) "a person engaged in the business of transporting property for hire," all within the meaning of Sec. 3475 of the Internal Revenue Code, and the regulations thereunder. That the tax herein was legally assessed and collected. That the plaintiffs are not entitled to recover.

Let judgment be prepared and it will be entered accordingly.