**KERNS et al. v. UNITED STATES.**

**No. 6573.**

United States Court of Appeals
Fourth Circuit.

Argued April 13, 1953.

Decided May 28, 1953.

William T. Joyner, Jr., Raleigh, N. C.
(W. T. Joyner, Raleigh, N. C., on brief),
for appellants.

Alonzo W. Watson, Sp. Asst. to Atty.
Gen. (H. Brian Holland, Asst. Atty. Gen.,
Ellis N. Slack, Robert N. Anderson and
Joseph F. Goetten, Sp. Assts. to Atty. Gen.,
and Thomas A. Uzzell, Jr., U. S. Atty.,
Asheville, N. C., on brief), for appellee.

Before PARKER, Chief Judge, and SO-
PER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal in an action instituted
in the court below to recover transportation
taxes assessed against and collected from
taxpayers under 26 U.S.C. § 3475. Tax-
payers contended that they were not en-
gaged in transportation within the meaning
of that section but merely rented trucks to
a stone company which used them in con-
nection with operations within its quarry.
The District Judge held adversely to this
contention and from judgment in favor of
the United States, the taxpayers have ap-
pealed.

The statute under which the tax was as-
sessed is as follows:

"(a) Tax. There shall be imposed
upon the amount paid within or without
the United States for the transporta-
tion of property by rail, motor vehicle,
water, or air from one point in the
United States to another, a tax equal
to 3 per centum of the amount so paid,
except that, in the case of coal, the
rate of tax shall be 4 cents per short
ton. Such tax shall apply only to
amounts paid to a person engaged in
the business of transporting property
for hire, including amounts paid to a
freight forwarder, express company, or
similar person, but not including
amounts paid by a freight forwarder,
express company, or similar person for
transportation with respect to which a
tax has previously been paid under this
section. In the case of property trans-
ported from a point without the United
States to a point within the United
States the tax shall apply to the amount

paid within the United States for that part of the transportation which takes place within the United States. The tax on the transportation of coal shall not apply to the transportation of coal with respect to which there has been a previous taxable transportation."

The pertinent portion of section 1431 of Treasury Regulations 113, the regulation applicable under the statute, is as follows:

"* * * The term 'person engaged in the business of transporting property for hire' includes a common carrier, contract carrier, local moving or drayage concern, freight forwarder, express company, or other person transporting property for hire wholly or in part by rail, motor vehicle, water, or air.

\* \* \* \* \* \*

"* * * The term 'transportation' as used herein means the movement of property by a person engaged in the business of transporting property for hire, including interstate, intrastate, and intracity or other local movements, as well as towing, ferrying, switching, etc. In general, it includes accessorial services furnished in connection with a transportation movement, such as loading, unloading, blocking and staking, elevation, transfer in transit, ventilation, refrigeration, icing, storage, demurrage, lighterage, trimming of cargo in vessels, wharfage, handling, feeding and watering live stock, and similar services and facilities."

The facts are that taxpayers are the owners of five dump trucks, which, because of their width and weight, are not adaptable to ordinary transportation on highways and are not allowed to travel on the highways of North Carolina without a special permit. These trucks are operated by drivers employed and paid by taxpayers and are rented with the drivers by the hour to the Superior Stone Company, which operates a large stone quarry near Kings Mountain, North Carolina. The use made of the trucks is as follows: After stone is blasted down by the use of dynamite from the face of the quarry pit, it is scooped up by a steam shovel and loaded in the trucks and is carried by them a distance of from 500 feet to 3/10 of a mile to the primary rock crusher, where it is broken up into smaller pieces and transported by conveyor belts to a series of other rock crushers by which it is reduced to the desired merchantable size. Some of the crushed rock is loaded directly into railroad cars or into trucks for transportation to customers and is not here involved. The remainder is loaded into the taxpayers' dump trucks and carried to rock piles in the quarry, a distance of from 500 feet to 3/10 of a mile from the crushers, to await future transportation.

The five dump trucks supplied by taxpayers are the only means used by the stone company in moving to the primary stone crusher the stone which has been blasted from the face of the pit and in moving the crushed stone from the final crusher to the stock piles within the quarry. While the drivers of the trucks are paid by taxpayers, they are subject to the absolute control and direction of the stone company as to every detail of the work performed, and a fixed hourly rental is paid for the use of the trucks and drivers without regard to the work done or the tonnage hauled. Taxpayers carry workmen's compensation and liability insurance on the trucks and make social security deductions from the wages of the drivers.

On these facts we think it clear that the position of taxpayers is correct and that they are merely renting to the stone company trucks which are used on the premises of the latter in its quarrying operations and are not engaged in transportation within the meaning of the statute. The movement of stone to and from the crushers is a part of the quarrying and stone crushing in which the stone company is engaged; and the movement does not lose the character of the operation of which it is a part merely because the company rents trucks with drivers from the taxpayers for the purpose of carrying it on. As the company has the exclusive power of directing the work in which the trucks are engaged, the drivers are to be deemed its servants in the performance of the work. Malisfski v. Indemnity Ins. Co. of North America, 4 Cir., 135 F.2d 910, 912–913; H. E. Wolfe Const.

Co. v. Fersner, 4 Cir., 58 F.2d 27, 28; Standard Oil Co. v. Anderson, 212 U.S. 215, 221–222, 29 S.Ct. 252, 53 L.Ed. 480.

Even if it be considered that the trucks and drivers are engaged in the business of taxpayers rather than of the company, the fact remains that all that they do is to move stone as a part of the quarrying and stone crushing operation in which the company is engaged on the quarry premises, without transporting it to any other place; and we think that this is no more transportation within the meaning of the statute than would be the movement of dirt or stone by a steam shovel under similar circumstances. The tax was manifestly intended to apply to transportation for hire as that term is generally understood, i. e. such transportation as is furnished by common carriers, freight haulers, express companies, etc., who carry property from one place to another for compensation, and has no application to a movement of property which is limited to the premises on which mining, quarrying, manufacturing or other form of productive enterprise is carried on and which constitutes an integral part of such enterprise. We think that this is made clear by the language of the statute itself as well as by the language of the regulation interpreting it. Certainly, this interpretation is sustained by the great weight of authority. See Masonite Corp. v. Fly, 5 Cir., 194 F.2d 257; Edward H. Ellis & Sons v. United States, 3 Cir., 187 F.2d 698; Castle Shannon Coal Corp. v. United States, D.C., 98 F.Supp. 163; Continental Oil Co. v. Jones, D.C., 92 F.Supp. 927; Lyle v. United States, D.C., 76 F.Supp. 787; Williams v. United States, D.C., 72 F.Supp. 300.

The case of Getchell Mine, Inc., v. United States, 9 Cir., 181 F.2d 987, relied on by appellee, is readily distinguishable. That case involved the transportation of gold ore from mine to mill by a trucking company which was paid by the cubic yard for the transportation of the ore and in accordance with the distance that it was transported. The movement of ore there involved from mine to mill was certainly transportation of property from one place to another within

any fair meaning of the term "transportation" and was very different from the movement of stone to crusher and from crusher to stock pile here, all of which occurred on the quarry premises.

For the reasons stated the judgment appealed from will be reversed and the case will be remanded with direction to enter judgment for the taxpayers.

Reversed.