**J. G. SHOTWELL, Plaintiff,**

v.

**The UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 3826.**

United States District Court
W. D. Washington, N. D.

Nov. 30, 1956.

Meredith M. Daubin, Washington, D. C., Zundel, Danz, Brain & Isaac, Seattle, Wash., for plaintiff.

Charles P. Moriarty, U. S. Atty., Edward J. McCormick, Jr., Asst. U. S. Atty., Thomas R. Winter, Seattle, Wash., Sp. Asst. to Regional Counsel, Internal Revenue Service, Seattle, Wash., for defendant.

FOLEY, District Judge (by special assignment).

Plaintiff J. G. Shotwell seeks to recover taxes collected under Section 3475, Internal Revenue Code, 26 U.S.C.A. § 3475, in the amount of $15,168.20 together with interest from time of payment.

The Court is presently concerned with motions for summary judgment by both plaintiff and defendant.

By stipulation filed August 13, 1956, the parties have agreed that the deposition of Bertram W. Hoare, the Assistant Chief of Construction Division, Corps of Engineers, United States Army, taken October 27, 1955, including Joint Exhibits 1, 2 and 3, deposited with the Clerk of the Court, may be filed herein as agreed facts in this cause.

A summary of the material facts alleged in plaintiff's complaint and admitted by defendant's answer is the following:

Taxes under Section 3475 of the Internal Revenue Code were collected by Hugh H. Earle as the Collector of Internal Revenue for the District of Oregon who was not in office as Collector at the time this action was commenced;

The Court has jurisdiction over this action under Section 1346(a) (1), Title 28 U.S.C.A.;

Exhibit "A", attached to the complaint, is a copy of a contract between the Department of the Army and the plaintiff;

The haul road from Berrian Island, Washington, to the McNary Dam site was on Government owned property and the Corps of Engineers, United States Army, in charge of the construction of the McNary Dam determined Berrian Island and the haul road to be within the work area of the McNary Dam project. The aggregates moved from Berrian Island and deposited at the McNary Dam site were incorporated into the McNary Dam concrete structure;

Plaintiff paid to Keith Williams during the period October 1, 1948, to June 8, 1950, the amount of $505,606.54 under a contract for the movement of aggregates from Government owned property on Berrian Island over Government owned roads to the McNary Dam site;

The Collector of Internal Revenue assessed to the plaintiff and the plaintiff has paid to the said Collector of Internal Revenue during November and December, 1951, the sum of $15,168.20 as federal transportation tax under Section 3475 of the Internal Revenue Code at three per cent on the amount of $505,606.54;

On April 28, 1952, the plaintiff filed with the Collector of Internal Revenue, District of Oregon, Portland, Oregon, a claim for a refund of $15,168.20 assessed and collected in November and December, 1951. A copy of said claim is attached to the complaint as Exhibit "C".

Portions of the deposition of Bertram W. Hoare, which the Court deems of interest here, are as follows:

"Q. Would you briefly state the sequence of events which occurred as a result of the construction of the dam axis—the dam at the dam axis?

"A. I presume you mean the general schedule of operations for the complete project? The initial operation was to acquire real estate at the immediate damsite. Following that, construction was instituted of some living facilities for construction workers in McNary City, and also in the temporary housing area known as Homaja, which was approximately two miles upstream from the dam on the Washington shore. McNary City was located on the Oregon shore, the nearest point to the dam itself being approximately one-half mile and the furthest point a mile and a half from the Oregon abutment. The next operation was the construction of certain access facilities to the damsite, followed by a contract for the excavation of the area in which the navigation lock was to be constructed.

This lock was built on the Washington end of the dam. At about the completion of the excavation contract, a contract was entered into with Mr. J. G. Shotwell for obtaining the processing and the stockpiling of aggregates for concrete which was to be used in the construction of the lock and of the Washington end of the dam. * * *

"Q. What was the reason for the separate aggregate contract in reference to the first major construction? A. I presume you mean Mr. Shotwell's contract?

"Q. Yes. A. That contract was made separately so that work could be instituted procuring the aggregates and actually having it stockpiled so as to expedite the construction of the navigation lock. It was a matter of planning to supply the aggregate to the construction contractor to shorten the time required by him between his notice to proceed and the date at which he could be placing concrete. It was also intended should there be other auxiliary work undertaken that the Government could also furnish aggregate to other contractors in small amounts.

*     *     *     *     *     *

"A. The aggregate processing plants on Berrian Island were located—and referring to Joint Exhibit 3, in Lot 1 of Section 8, Township 5 North, Range 29 East, and upstream in Lot 4 of the same section. The road used to haul the material to the damsite is shown on Exhibit 3 and is marked with the word 'road.' It is that road which lies immediately to the north of the S. P. & S. Railroad before relocation. The continuation of this road is shown by a dashed symbol on Exhibit 2 on the north side of the S. P. & S. Railroad right of way. The haul road continued downstream to a point approximately a quarter of a mile below the dam axis, at which point was located a re-claiming tunnel over which the aggregates were

dumped. This applied to all aggregate, excepting the sand which was further processed in the vicinity of the reclaiming tunnel. Mr. Shotwell's responsibility and execution of his contract ended with the delivery of the materials in stockpiles at this point. * * *

"Q. Is it a fact that the Government wanted the gravel it owned on Berrian Island in the McNary project moved to the McNary damsite so that the gravel could be incorporated in the McNary Dam? A. It is, * * *.

"Q. The gravel removed by Shotwell on Berrian Island was hauled over Government rights of ways to the dam structure and used therein? A. That is correct.

"Q. Then it is not a fact that the gravel on Berrian Island and the haul roads were all a part of the work area of the dam construction? A. * * * I would consider that Berrian Island was within the project area, although it would not appear to be what would normally be considered within the dam construction area."

The Court is of the opinion that no genuine issue as to any material fact exists.

In his reply brief, filed August 13, 1956, plaintiff states his contention as follows:

"The plaintiff contends that this movement of gravel solely within the confines of the project and used as an integral part of the construction project is not taxable as 'transportation' of property from one point in the United States to another under Section 3475."

In Getchell Mine v. United States, 181 F.2d 987, 990, the Court of Appeals for the Ninth Circuit discussed questions pertinent here:

"(4) Appellant argues that the word 'point', means the same as 'place', and that since the whole enterprise of appellant, the mining, milling and hauling, were conducted upon its own ground, which was a single 'place', the transportation was not 'from one point in the United States to another'.

"We think section 3475(a) is not susceptible of such a construction, and that the hauling here was from point to point within the meaning of the Act. The case of Lyle v. United States, D.C., 76 F.Supp. 787, upon which reliance is had, held no more than that the use of trucks in grading an airfield, where the trucks were used to haul earth from a power shovel to dumps and fills, was not a use for transportation under the Act. We regard is as not apposite here. * * * *"

Plaintiff relies heavily upon Edward H. Ellis & Sons v. United States, decided March 13, 1951, 3 Cir., 187 F.2d 698, 699.

The state of facts under which the tax was imposed in the Ellis case are set out in the opinion of Judge McLaughlin as follows:

"Appellee, a general contractor, agreed with the Texaco Company that it would clear, level and grade a tract of land owned by the Texaco Company in West Deptford Township, New Jersey, on which the Texaco Company proposed to construct a large oil refinery and storage plant.

"In connection with the clearing, leveling and grading of the tract, appellee entered into an oral subcontract with one Krantz whereby the latter was to furnish appellee with trucks and drivers to assist in that project. Krantz was to be paid at an hourly or daily rate per truck. His trucks were used exclusively within the boundaries of the track. They moved earth from points in the area where it was being excavated to points in the same area where it was needed as fill. The trucks were loaded by grading shovels. They carried the earth distances varying from three hundred feet to one mile. Where the distance from an excavation to a place which was to be filled was less, appellee itself moved the

earth by means of men with hand shovels, bulldozers, carry-alls or otherwise. Krantz, admittedly, is in the trucking business and within the statutory definition of ' * * * a person engaged in the business of transporting property for hire * * *.' "

The Court of Appeals detailed its reasons for agreeing with the finding of the District Judge that the transactions in the Ellis case did not constitute transportation of property from one point in the United States to another within the meaning of Section 3475 of the Internal Revenue Code:

"(2) The other minor query is whether the earth carried by the Krantz trucks was 'property' as intended by the statute. We think it was and if the facts really pointed to its 'transportation' we would not have the slightest difficulty in upholding the tax. But it is on that vital issue of whether the moving of the earth, under the circumstances before us, constituted 'transportation * * * from one point in the United States to another, * * *' as contemplated by Section 3475 we differ from appellant. The operation by the Krantz trucks was an integral part of the construction of the oil company's plant. It concerned the clearing, grading and leveling of the premises for that sole purpose. It did not concern transportation as that term is commonly employed. We are entitled to consider that the use of the word in the Code was confined to its ordinary sense. * * *

"(3) This movement of earth, an important element in the initial steps of the erection of the Texaco plant, namely, the clearing, grading and leveling of the tract, fails to meet the every day usage of the term transportation. It fails in evidencing any kinship to the various meanings of the word given in the Treasury Regulations supplementing Section 3475. It fails of any support at all in the reported cases under Section 3475."

In Lyle v. United States, D.C.N.D.Ga., 76 F.Supp. 787, cited by plaintiff, the decision of the District Judge against the Commissioner of Internal Revenue was based upon facts similar to those found in Ellis v. United States, supra. The hauling in that case was in the construction of an airfield and involved moving earth incidental to grading and leveling of the airfield. The movement of earth in the Ellis and Lyle cases constituted an integral part of the construction there considered.

It will be noted that in his deposition Mr. Hoare testified "Mr. Shotwell's responsibility and execution of his contract ended with the delivery of the materials in stockpiles" at a reclaiming tunnel. The movement of the aggregates from Berrian Island to the stockpiles by Williams amounted to a movement or transportation of material intended to be used in the construction of McNary Dam. The aggregates or gravel moved by Williams were not taken from excavations necessarily made in connection with the clearing, leveling or grading of the actual damsite or taken from excavations made for the preparation of installations or foundations or other structures constituting the McNary Dam. It is obvious that the movement of the aggregates or gravel in the present case was not an integral part of the construction of McNary Dam.

Williams, in the carrying out of his contract, was a person engaged in the business of transporting for hire.

In Bridge Auto Renting Corporation v. Pedrick, 2 Cir., 174 F.2d 733, the Court, in the course of its opinion, stated, on page 738:

"(2) * * * Without repeating in detail what the appellant did to earn the receipts which were taxed, it did in the aggregate all that was reasonably necessary to be done to transport its customer's property. Indeed, it is plain enough that these customers, regardless of what else they saw fit to do, had only to provide the goods for transport, direct the drivers where to take them and

pay the appellant for performing the transportation service. It cannot be said that such service for pay did not make the appellant a person transporting property for hire to that extent even though in doing the greater part of its business it was otherwise engaged. While it may be that some of the M.C.C. decisions above cited rest in part on the fact that where a person is already engaged in the business of transporting property for hire, some special arrangement it makes for the use of part of its transportation facilities may be the more readily recognized as but a variation in form without a change in substance from its regular business, whatever does in fact amount to transporting property for hire brings the person who does it within this taxing statute although no other part of his business does so or has done so."

Plaintiff's motion for summary judgment is denied.

Defendant, United States of America, is entitled to judgment as a matter of law and to recover costs herein incurred and is directed to prepare and submit a form of judgment.