## OHIO RIVER SAND CO. v. UNITED STATES.

### No. 695.

District Court, W. D. Kentucky, Louisville Division.

May 25, 1945.

McAfee, Grossman, Hanning & Newcomer, of Cleveland, Ohio, and Squire R. Ogden, of Louisville, Ky., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Fred J. Neuland, Sp. Assts. to the Atty. Gen., and David C. Walls, Acting U. S. Atty., of Hardinsburg, Ky., for defendant.

MILLER, District Judge.

The plaintiff, Ohio River Sand Company, brought this action to recover $725.-23 which it claims was illegally assessed against and collected from the plaintiff under the provisions of Section 3475 of the Internal Revenue Code, as amended by Section 620(a) of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Code, § 3475, which imposes a three per cent. tax on the transportation of property by rail, motor vehicle, water or air. A timely claim for refund was made by the plaintiff and disallowed by the Commissioner of Internal Revenue.

The plaintiff is a Kentucky corporation with its principal office in Louisville, Kentucky. It was engaged in the business, among others, of owning, operating, and chartering to others for operation, sometimes with and sometimes without a full or partial crew, towboats and motor vehicles constructed and designed primarily for operation on the Mississippi and Ohio Rivers. On or about June 27, 1941, the plaintiff entered into a written agreement with the Standard Oil Company of Ohio to furnish and operate a tug motor vessel owned by the plaintiff and bearing the name "J. H. Duffy" for the towing of

barges belonging to the Standard Oil Company between points on the Ohio and Mississippi Rivers. The tugboat "J. H. Duffy" was not itself a cargo carrying vessel and was during the period involved used exclusively for the purpose of towing empty or loaded barges containing crude petroleum or petroleum products between various points on the Mississippi and Ohio Rivers as the Standard Oil Company from time to time directed. Pursuant to the terms of the agreement plaintiff furnished not only the tugboat "J. H. Duffy" but also the operator and other crew members and all necessary fuel and operating supplies. The plaintiff carried on its own payroll the Captain and all members of the crew, paid all expenses for repair work, supplied all fuel, supplies and spare parts for the maintenance and operations of the tugboat. The crew of the boat was to assist in making connections in loading and discharging of cargos, but was not to be required to perform any shore work whatsoever. The plaintiff was to be responsible for the navigation of the boat while engaged in towing the barges, but was not to be held to common carrier liability, being only responsible for loss of or damage to the barges or cargos therein to the extent that such loss or damage was attributable to willful acts or negligence on the part of the officers or crew on the towboat. The Standard Oil Company was to furnish the master of the boat from time to time with instructions and sailing directions, and had the right to place a representative on the towboat during any trip while the towboat was towing barges for it. The Standard Oil Company agreed to pay as a daily charge for the use of the towboat the sum of $365 which was to begin on the date of delivery of the boat to it and continue until its return to its home port at Louisville, Kentucky. If the cost of labor for operating the boat should increase or decrease the daily charge was to be increased or decreased in such amount as might be necessary to reflect the actual daily increase or decrease as the case might be. Reductions in rental payments were provided for in the event of loss of time from breakdown of machinery, stranding or damage to the boat or its equipment preventing the use thereof for more than twenty-four consecutive hours on any one occasion. In the event ice or river conditions or other natural conditions precluding the use of the boat the plaintiff agreed to effect such reductions in the maintenance, fuel, crew and other operating cost during said period as might be reasonably possible, and to credit the Standard Oil Company with the full amount of such reductions so effected.

Pursuant to the terms of the agreement Standard Oil Company paid to the plaintiff as and for the rentals reserved therein the sum of $13,108.19 for the month of December 1942 and $11,066.10 for the month of January 1943. A tax of 3% was assessed and collected on these payments, for the recovery of which this action was filed.

Section 3475 of the Internal Revenue Code as amended provides that there shall be imposed upon the amount paid within the United States after the effective date of the Act for the transportation of property by rail, motor vehicle, water or air from one point in the United States to another, a tax equal to three percentum of the amount so paid, except that in the case of coal a rate of four cents per short ton was to apply. It further provides that "such tax shall apply only to amounts paid to a person engaged in the business of transporting property for hire, including amounts paid to a freight forwarder, express company, or similar person, * * *." The defendant contends that the towing of barges carrying petroleum products is transportation of property by water, and that under the contract in question the plaintiff performed this service. The plaintiff contends that it leased the towboat, equipment and crew to the Standard Oil Company and that it thereafter transported its own product by use of the leased towboat.

It seems clear that the towing of barges containing petroleum products constitutes transportation of property by water within the provisions of the statute. It is not necessary that the motive power applied to move the barges be in the barges themselves. The movement of barges by tugs is similar to the transportation of freight over highways in trailers attached to motor trucks. Transportation implies the taking up of persons or property at some point and putting them down at another. Gloucester Ferry Co. v. Pennsylvania, 114 U.S. 196, 203, 5 S.Ct. 826, 29 L.Ed. 158.

This leaves as the real question in the case whether the plaintiff was furnishing to the Standard Oil Company under the contract in question transportation

service or leasing to it a tugboat with which it could do its own transportation. In order for the plaintiff to be liable for the tax it is necessary under the statute that it be "engaged in the business of transporting property for hire." There are several provisions in the contract which lead to the conclusion that the plaintiff leased its boat on a rental basis rather than engaging in the business of transporting property for hire. It was specifically provided that the plaintiff was not a common carrier. No origin points or destination points for any towing service was specified, nor was there any provision with reference to the number of barges which the vessel might tow or to the quantity or specific quality of the contents of the barges being towed. These items were under the exclusive control of the Oil Company. The compensation was not based upon mileage, number of trips made, number of barges towed, or the number of days or hours in any day that the towboat was actually in use. The daily rental of $365 was payable regardless of whether the Standard Oil Company made use of its services or not. The provisions for deductions in the rental charge when the towboat was not useable due to breakdowns or river conditions indicate a rental arrangement rather than a towing contract. The court is accordingly of the opinion that under the contract in question the plaintiff was not "engaged in the business of transporting property for hire."

The plaintiff is entitled to recover the amount of the tax which it was required to pay, with interest from date of payment.