## GULF COAST TOWING CO., Inc. v. UNITED STATES.

### Civ. A. No. 2471.

United States District Court
E. D. Louisiana, New Orleans Division.

April 6, 1951.

L. V. Cooley, Jr., of Slidell, La., for plaintiff.

John N. McKay, U. S. Atty., and Lansing L. Mitchell, Asst. U. S. Atty., of New Orleans, La., for defendant.

CONNALLY, District Judge.

This is an action by the plaintiff (referred to hereafter as "Towing Company") against the United States to recover certain transportation taxes paid, allegedly in error, for transportation occurring August 1, 1943 to December 31, 1943, and from April 1, 1945 to July 31, 1946, under Sec. 3475 of Title 26, U.S.C.A. Counsel have stipulated all of the facts, to which stipulation, with exhibits, I refer as constituting all of the evidence before me.

Briefly stated the facts are as follows. Towing Company at all material times has been engaged in the business of owning, operating, and renting to others fully manned tugboats for use by shippers in performing their own transportation, and likewise in shipping cargo for others. Lone Star Cement Corporation ("Cement Company" hereafter) has been engaged in the cement business, and in connection therewith owned and operated its own fleet of thirteen barges and two tugs, which it used to transport its products from place to place. One of the principal movements appears to have been between Mobile and New Orleans.

On April 27, 1942, Towing Company and Cement Company entered into a written contract under the terms of which a tugboat, The Bessemer, was to be used in towing loaded and unloaded barges of Cement Company between Mobile and New Orleans. This contract remained in effect from April 27, 1942 to November 27, 1943. Similar contracts covered the operations for the later periods. The question presented is whether, under the contract between Towing Company and Cement Company, there was, as plaintiff contends, a rental or chartering of the tug by Towing Company to Cement Company, with the latter making use thereof for its own transportation of its own materials, or on the other hand, as the Government contends, the contract was one under which Towing Company undertook the transportation of Cement Company's products.

The contract provides for payment by Towing Company of a charge of $150 per calendar day during the life of the contract, without regard to the actual use of the tug during such calendar day; that the tug would be manned by a captain and crew, employed and paid by Towing Company; Towing Company was to furnish all fuel, commissary stores, etc., and to pay all expenses connected with operation of the tug; Towing Company was to carry full insurance, and to assume liability for damage to the person or property of third parties or members of the crew of tug or tow. The contract contained an escalator clause providing for increased compensation in the event wages of the captain or crew, cost of fuel or insurance rates rose above those prevailing at the contract date. Payment of the per diem charge was to be suspended in the event of breakdown of the tug or its machinery.

It is stipulated that Cement Company furnished all sailing directions, but the detailed navigation of the tug and tow was under the control and direction of the captain of the tug who, as stated, was and remained an employee of Towing Company.

The question here presented has been raised many times. Bridge Auto Renting Co. v. Pedrick, 2 Cir., 147 F.2d 733; Casale, Inc. v. U. S., 86 F.Supp. 167, 114 Ct.Cl. 599; Edward H. Ellis & Sons, Inc. v. U. S., 3 Cir., 187 F.2d 698; Getchell Mine v. U. S., 9 Cir., 181 F.2d 987; Ohio River Sand Co. v. U. S., D.C., 60 F.Supp. 563; Earle v. Babler, 9 Cir., 180 F.2d 1016; Masonite Corp. v. Fly, 5 Cir., 182 F.2d 934. The cases, however, are of help only in stating general principles, for there are so many considerations in determining which concern actually performed the transportation that no two cases seem quite alike. Most similar in point of fact is that of Ohio River Sand Co. v. United States, 60 F.Supp. 563, which holds in the plaintiff's favor on very similar facts. However, the case has been criticized in Bridge Auto Renting Corp. v. Pedrick, supra.

As tending to show that it chartered the tug to Cement Company, which company performed its own transportation, plaintiff points to the fact that the per diem charge was made whether the vessel was used or not; that Cement Company owned other tugs and barges with which it performed a majority of its own transportation and simply chartered The Bessemer to supplement its own fleet; and the fact that the sailing orders (which it contends constituted the real control) all came from Cement Company. These are quite persuasive. As indicating to the contrary, the Government points to the fact that admittedly the captain and crew remained the employees of Towing Company, and to the fact that Towing Company was liable to third persons for tort claims arising from operation of the tug and tow. In my opinion, the case is a very close one, on the border line referred to in U. S. v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757. In reading the argument and authorities cited by counsel, I have not consistently held to the view which I presently entertain.

Having recourse to the contract, and looking at it in its entirety and without attempting to separate the various provisions which tend first in one direction, and then the other, I feel that the parties intended this to be a contract for transportation and not a contract for the charter of a vessel. It states clearly "that the said Transporta-

tion Company *agrees to tow* loaded and unloaded raw material barges * * *." (Emphasis mine.) The words "to transport" might have been used in lieu of "to tow" without changing the import of the language. I am impressed, too, by the fact that beginning in 1942 the taxes were paid by the plaintiff and passed on to Cement Company, which waited until after publication of the Ohio River Sand Co. opinion to raise the question; and now, as I infer from the last paragraph of the stipulation, in the name of plaintiff seeks to recover. At the time of execution and performance of the contracts, I feel that the parties considered and treated them as transportation contracts, and that the tax was properly collected.

Counsel for the defendant may present decree denying the relief prayed for.