MASONITE CORP. v. FLY, Collector
of Internal Revenue.

No. 13780.

United States Court of Appeals
Fifth Circuit.

Feb. 15, 1952.

258

Denton Gibbes, Laurel, Miss., for appellant.

Carolyn R. Just, Robert N. Anderson, Fred E. Youngman, Special Assts. to Atty. Gen., Ellis N. Slack, Acting Asst. Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Joseph E. Brown, U. S. Atty., Jackson, Miss., for appellee.

Before JOSEPH C. HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

JOSEPH C. HUTCHESON, Chief Judge.

The suit was for the refund of the 3 per cent tax assessed against plaintiff as for transportation under the purported authority of Subsec. (a), Sec. 3475, Title 26 U.S.C.A.[1] and Treasury Regulation 113,[2] and paid by it under protest.

The claim in general was that the operation, in respect of which the tax was assessed, was not transportation as that term

---

[1] As pertinent here, the subsection provides: "(a) Tax.—There shall be imposed upon the amount paid within the United States after the effective date of this section for the transportation, on or after such effective date, of property by rail, motor vehicle, water, or air from one point in the United States to another, a tax equal to 3 per centum of the amount so paid, except that, in the case of coal, the rate of tax shall be 4 cents per short ton. Such tax shall apply only to amounts paid to a person engaged in the business of transporting property for hire, including amounts paid to a freight forwarder, express company, or similar person, * * *."

[2] "Sec. 143.1. Meaning of Terms.—As used in these regulations, unless otherwise specified or indicated by the context—

  *   *   *   *   *   *

(b) Person engaged in the business of transporting property for hire.—The term 'person engaged in the business of transporting property for hire' includes a common carrier, contract carrier, local moving or drayage concern, freight forwarder, express company, or other person transporting property for hire wholly or in part by rail, motor vehicle, water, or air.

  *   *   *   *   *   *

(d) Transportation.—The term 'transportation' as used herein means the movement of property by a person engaged in the business of transporting property for hire, including interstate, intrastate, and intracity or other local movements, as well as towing, ferrying, switching, etc. In general, it includes accessorial services furnished in connection with a transportation movement, such as loading, unloading, blocking and staking, elevation, transfer in transit, ventilation, refrigeration, icing, storage, demurrage, lighterage, trimming of cargo in vessels, wharfage, handling, feeding and watering live stock, and similar services and facilities.

(e) Property.—The term 'property' means any physical matter regardless of value over which the right of ownership or control may be exercised, including currency, documents, papers of all kinds, etc."

is used in the taxing statute and defined in the regulations.

In particular it was: that, as conclusively shown by the pleaded facts, none of the fifty-three individuals engaged in loading the wood were transporters of property as defined in the act and the applicable regulation; and that the sums paid them for moving the wood, stacked on plaintiff's premises, short distances, the longest 1100 feet, onto plaintiff's railway cars, for delivery to plaintiff's mill, were not paid for transportation "to persons engaged in the business of transporting property for hire", as set out in the statute and defined in the regulation.

Defendant moved to dismiss the complaint on the ground that the facts pleaded did not warrant the recovery sought, there was a judgment against plaintiff on the motion, and an appeal to this court.[3]

Reversing the judgment for trial on the merits, this court there said in part: "The existence of tax liability under the provisions of Sec. 3475 of the Internal Revenue Code, 26 U.S.C.A. § 3475, levying a tax on the transportation of property, depends upon whether the transaction in question in any case is 'transportation' within the terms of the statute. This is generally a question of fact to be determined in the light of the applicable statute and regulations, and only in the clearest case should be determined upon the pleadings alone. The allegations of the complaint in the present case do not establish liability to the transportation tax as a matter of law. The defendant can not admit each of the allegations of the complaint, together with any reasonable inference flowing from their establishment, and defeat recovery of the tax alleged to have been illegally exacted."

When the case again came on for hearing, it was on stipulated facts. This time the appeal is from a judgment against plaintiff, not on the pleadings but on the stipulated facts, and appellant is here insisting: (1) that those facts are in substance identical with the facts [4] as pleaded, and the judgment is inconsistent with our earlier opin-

3. Masonite Corp. v. Fly, Collector, 5 Cir., 182 F.2d 934, 935.

4. Plaintiff has a large plant at Laurel, Miss., for the manufacture of wall board and similar products out of pulp wood. This pulp wood is purchased on the market in units, the dimensions of a unit being those of a standard cord except as to width. Because of seasonal difficulties in getting the wood from the forests, plaintiff has found it necessary to accumulate on its yard, a reserve supply.

Plaintiff owns a large tract or acreage of land in and near Laurel, Miss., and on parts of such tract are located its yard or yards and a railroad track leading from a point adjacent to the yard or yards over plaintiff's premises to the plaintiff's factory or mill also located on plaintiff's premises.

It also owns wood cars and a locomotive, the latter being used to move the wood cars from place to place on the premises where the factory and yards are located. The wood cars are moved by said locomotive and stationed in the yard or yards and at or near the place or places in said yard where the reserve wood is stacked. The wood is taken from the stacks, loaded on a truck and moved to the wood car so stationed. Then the wood is removed from the truck and loaded on the wood car. After loading, the wood car is moved by said locomotive to the plant or factory where the wood is used in the manufacture of wall board. The longest haul made by any truck in moving the wood from the stacks on the yard to the wood cars is 1100 feet and all on the premises of plaintiff.

To accomplish this movement of the wood from the stack to the wood cars, plaintiff customarily employed some person owning, or having the use of a truck and paid to him the sum of $1.25 per unit to remove the wood from the stacks on the yard, load it on the truck, move it to the wood car and load the wood on the wood car. That in no instance was the person so employed a common carrier but was simply a person who furnished a truck and the labor necessary to remove the wood from the stacks and transport it to, and load it on, the wood cars. This payment of $1.25 per unit included not only payment for the movement of the wood from the stack on the yard but for the labor of loading the wood from the stack to the truck and loading the wood car with the wood from the truck after its movement from the stack to the wood cars.

The loading of the wood on the truck, transporting the wood to the wood car, unloading the wood from truck to wood

ion; and (2) that, that opinion wholly aside, the judgment is without support in law.

Appellee denies that our former opinion concludes the case and insists that the judgment was right and must be affirmed.

We do not think so. On the contrary, we find ourselves in agreement with appellant on both of its contentions. Upon a comparison of the pleading of plaintiff, of which, on the first appeal, we said "defendant can not admit each of the allegations of the complaint, together with any reasonable inference flowing from their establishment, and defeat recovery", with the admissions of the stipulation on which the judgment appealed from rests, we are of the opinion that the judgment is in conflict with our previously expressed views.

Our former opinion aside, however, we think that to exact a tax from plaintiff under these facts is to run directly counter to the fundamental principles of taxation inherent in our system and a part of our common law heritage, that the levying of taxes is the exclusive function of the Legislative branch and that the Executive may not exact taxes from the citizen except where the proposed exaction finds clear support in the taxing law.

While the apostasy recently put forward by many persons, both in and out of the Executive and Judicial branches of the goverment, and practiced by some in them: that this view of the law is outmoded; that, while law making is theoretically for the Legislative, this is so only in broad outlines; that, in the last analysis, it is for the boards and commissions the new instruments of public power,[5] and for the courts [6] to extend and stretch taxing statutes so that their meshes will cover all caught in the collector's net, has sapped at the foundations of the principle, it has not yet undermined it. Until it does, the determination of the content and stretch of taxing statutes will remain with the Legislative branch, and the rule in Heydon's case [7] will still control in the construction and application of statutes, taxing as well as others. Particularly, until it does, will the controlling rule for the interpretation of taxing statutes continue to be that set out in 51 Am.Jur., "Taxation", Sec. 310, Language of Statute. This is:

"The intention of the legislature with respect to tax statutes must, as in the case of statutes generally, be ascertained from the language of the act. As has been frequently pointed out, a tax cannot be im-

---

car and the moving of the car by locomotive to the plant all took place or occurred on the premises of plaintiff.

Of the $1.25 per unit paid by plaintiff, one-half thereof covers the unsegregated cost of the labor of moving the wood from stack to truck and the labor of removing the wood from the truck to the wood car. The remaining half covers the unsegregated cost of moving the wood after being loaded on the truck to the wood car.

5. "New Instrument of Public Power, or the Administro-Judicial Process and the Struggle for the Supremacy of Law", Hutcheson, Morrison Lecture, 1946 Annual meeting State Bar of California.

6. Cf. Fleming v. A. H. Belo Corp., 5 Cir., 121 F.2d 207 at 212-13; Affirmed 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716.

7. "In Heydon's Case in 1584, after all the barons of the Exchequer had argued in open court, it was unanimously resolved by Sir Roger Manwood, Chief Baron,

and the other Barons of the Exchequer: 'That for the sure and true interpretation of all statutes in general (be they penal or beneficial, restrictive or enlarging of the common law,) four things are to be discerned and considered. 1. What was the common law before the making of the act? 2. What was the mischief and defect for which the common law did not provide? 3. What remedy the Parliament hath resolved and appointed to cure the disease of the commonwealth? And 4. The true reason of the remedy? and then the office of all the judges is always to make such construction as shall suppress the mischief, and advance the remedy, and to suppress subtle inventions and evasions for continuance of the mischief, and pro privato commodo, and. to add force and life to the cure and remedy, according to the true intent of the makers of the act, pro bono publico.' 3 Co. 7a." Hutcheson, a case for three Judges, Harvard Law Review, Vol. XLVII, No. 5, March, 1934.

posed without clear and express language for that purpose. * * *"

"The literal meaning of the words employed in tax statutes is most important, and the general rule requiring adherence to the letter in construing statutes applies with peculiar strictness to tax laws. Crooks v. Harrelson, 282 U.S. 55, [51 S.Ct. 49, 75 L.Ed. 156].

See also 27 Am.Jur., "Income Taxes", Sec. 10: "The provisions of an income tax statute are not to be extended by implication beyond the clear import of the language used, U. S. v. Merriam, 263 U.S. 179, [44 S.Ct. 69, 68 L.Ed. 240], and in case of doubt are to be construed against the government and in favor of the taxpayer. Mc-Feely v. Commissioner, 296 U.S. 102 [56 S.Ct. 54, 80 L.Ed. 83] * * *." see also Crooks v. Harrelson, supra, and Helvering v. Griffiths, 318 U.S. 371, 63 S.Ct. 636, 87 L.Ed. 843.

■ Construing the statute, invoked as the basis for the action here, with these rules in mind, it is clear, we think, that the stretch and sweep of the act invoked and applied below does not include the moneys paid here. It does not include them because moneys paid by an employer to employees for work done on his premises, consisting of loading, at so much a unit, wood stored or stacked there are not paid for transportation within the act merely because the person employed "to remove the wood from the stacks on the yard, load it on a truck, remove it to the wood car, and load the wood on the car" owns or has the use of a truck.

Had the congress intended the statute to have the reach claimed for it by appellees, the act would not have used the qualifying words limiting transportation "to persons engaged in the business, etc.", the words on which appellant so strongly and so correctly relies. The act would have used the word "transportation", a word which, unqualified, is of wide reach and varied application.

The reason the word was not so broadly used is not far to seek. If it stood alone it would produce the unreal, the absurd, result of making payable as tax 3 percent of all moneys paid to any and every person for carrying anything any distance from a foot to a furlong, by hand, bicycle, wheelbarrow, burro, or other means, no matter how casual, occasional, or incidental the carrying was. Such a result was not intended. What and all that was intended was to tax amounts paid to a person "engaged in the business of transporting property for hire", not a person who, employed to do a job of loading, makes incidental use of a truck he owns or has the use of, as here, to move the wood the short distances required from stack to car.

In urging that the regulation makes loading and unloading, accessorial to transportation, the United States has put the cart before the horse. Here the employment was for loading the wood from the stack to the car. The use of trucks for moving this short distance was purely accessorial to loading.

The regulation which defines transportation, makes it more clear even than the statute does, that these 50 or more persons who used their cars in accomplishing their job of getting the wood loaded onto the cars were employees and not persons engaged independently in the business of transporting property for hire. In a case directly in point, Earle v. Babler, 180 F.2d 1016, the Court of Appeals for the Ninth Circuit expressly holds this to be so.

For the reasons above set out, the judgment is Reversed and here Rendered for appellant.