**GULF COAST TOWING CO., Inc. v. UNITED STATES.**

No. 13737.

United States Court of Appeals, Fifth Circuit.

May 16, 1952.

Hugh M. Wilkinson, New Orleans, La., L. V. Cooley, Jr., Slidell, La., for appellant.

Melva M. Graney, Ellis N. Slack, Special Assts. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Lansing L. Mitchell, Assistant U. S. Atty., New Orleans, La., for appellee.

Before HOLMES, RUSSELL, and RIVES, Circuit Judges.

RUSSELL, Circuit Judge.

Gulf Coast Towing Company, Inc., sued the United States seeking to recover alleged overpayment of Federal transportation taxes which it claimed to have paid through error. The United States denied that there had been an overpayment. The issue was submitted to the trial Court upon a stipulation of facts, to some of which we will refer hereinafter. The trial Court, by its memorandum opinion, reported at 98 F.Supp. 994, held that there had been no overpayment of taxes and entered judg-

4. 35 Am.Jur., Master & Servant, § 61, n. 17.

ment for the Government. This appeal followed.

Appellant, during the periods involved, was engaged in the business of owning, operating and renting to others fully manned tugboats. On April 27, 1942, it entered into a "Towage Contract" with Lone Star Cement Corporation under the terms of which it agreed to furnish a tug and to tow loaded and unloaded raw material barges between Mobile, Alabama, and New Orleans, Louisiana, for a period of six months.[1] In consideration thereof Lone Star Cement Corporation was to pay a fixed daily rate, subject to adjustment upward in the event the wages of the crew should be increased, and was responsible for any increase in the unit cost of fuel or war risk insurance above the rates existing at the time of the agreement. Appellant, referred to as "Transportation Company" in the contract, agreed to maintain a complete crew on the tug and to furnish all stores, fuels, oils, tow lines "and take care of all other expenses connected with the operation of the tug." In the event the tug should be taken out of service for repairs, Lone Star Cement Corporation was to be relieved of the payment of the daily "towing charge" for the period necessary to make such repairs. Appellant was to carry Marine Insurance on the tug at its expense and agreed to assume all liability for damages to property of third parties or injuries to third persons or members of the crew of the tug or tow, or both. Two similar contracts were entered into by the parties covering subsequent periods. Neither of these contracts provided for an adjustment of the daily rate to be paid by Lone Star Cement Corporation, but fixed a rate greater than the rate charged under the original contract. Except for this, the term of the contract and the name of the tug to be used, these contracts were identical with the contract of April 27, 1942.

At all times during the performance of these contracts Lone Star Cement Cor-

poration furnished all sailing directions and paid the daily charge for the use of the tug. The crew of the tug assisted in making connections and tying barges up for loading and discharging cargoes. The detailed navigation of the tug and tow was under the control and direction of the captain of the tug, who was in the employ of appellant.

Appellant collected from Lone Star Cement Corporation and paid to the Collector of Internal Revenue the 3 per cent transportation tax provided for by Section 3475(a) of the Internal Revenue Code, 26 U.S.C.A. § 3475(a), on the amount paid to it under the terms of the contracts. The total sum collected as tax and remitted to the Collector, $3,080.77, is the amount in controversy.

Section 3475(a) of the Internal Revenue Code, supra, insofar as is relevant here, imposes upon the amount paid for transportation of property by rail, motor vehicle, water or air from one point in the United States to another, a tax equal to 3 per centum of the amount so paid. This tax applies only to amounts paid to a person engaged in the business of transporting property for hire. "Transportation", as used in this Section, is defined by Treasury Regulation 113, Section 143.1(d) as the movement of property by a person engaged in the business of transporting property for hire and includes towing and accessorial services furnished in connection with a transportation movement. "Property", as defined by subsection (e) of Section 143.1, Treasury Regulation 113, "is any physical matter regardless of value over which the right of ownership or control may be exercised."

Appellant urges that the trial Court erred in finding that it was engaged in the transportation of property for hire within the meaning of the statute, insofar as the transactions described are concerned. Although stated variously, the crux of the contention is that the contracts were not contracts for transportation of property,

---

1. "That the said Transportation Company agrees to tow loaded and unloaded raw material barges (capacity not to exceed approximately 1,300 tons) between Mobile, Alabama and Lone Star's Plant located on the Industrial Canal, New Orleans, Louisiana * * *."

but were contracts for rental, lease or charter of marine equipment under which Lone Star Cement Corporation transported its own property by use of the leased tug. It is contended on behalf of appellee that the question can not be so limited since, under the facts of this case, the contractual agreement was specifically one for towage and otherwise provided a transportation service.

The same question here presented, arising from substantially the same facts, was determined by the District Court in Ohio River Sand Co. v. United States, 60 F. Supp. 563. In that case the Court recognized that the towing of barges constituted transportation, but held, as the appellant contends here, that the transaction evidenced a lease of the tugboat on a rental basis so that the lessee could transport its own property, and that the lessor was compensated for rental as the owner of the tug and was not "engaged in the business of transporting property for hire". In Bridge Auto Renting Corp. v. Pedrick, 174 F.2d 733, 737, the Court of Appeals for the Second Circuit referred to the Ohio River Sand Company case, supra, as being "indistinguishable", but expressly declined to follow it. The Bridge Auto Renting Corporation case decision involved a business where the taxpayer leased trucks to business concerns for hauling purposes and, as immediately there involved, the situation where the lessor furnished 42 of the taxpayer's customers drivers as well as trucks. The Court found these drivers to be employees of the taxpayer and, one judge dissenting, concluded that the lessor was engaged in the business of transporting property for hire as to such trucks. That decision turned upon the Court's answer to the questions stated, that the "lessor" furnished "substantially all the facilities for and perform[ed] substantially all of the functions of, transporting the property of the * * * customers whose payments to it were taxed". This Court has recently had occasion to reiterate that the existence of tax liability under the statute now involved "depends upon whether the transaction in question in any case is 'transportation' within the terms of the stat-

ute. This is generally a question of fact * * *." Masonite Corp. v. Fly, 5 Cir., 182 F.2d 934, 935; Masonite Corp. v. Fly, 5 Cir., 194 F.2d 257, 261. In the second appearance of the case it was emphasized that the intent of the statute "was to tax amounts paid to a person 'engaged in the business of transporting property for hire'."

Upon our consideration of the facts presented to us we conclude, contrary to the result reached by the Court in the Ohio River Sand Company case, supra, that the amounts upon which the tax was paid were "paid to a person engaged in the business of transporting property for hire". There can be no question that the compensation received by the towing company was that for the operation of a fully manned tugboat for towing barges, loaded and unloaded, used by the cement corporation in transporting raw materials used in its cement manufacturing business. Both the barges and the raw materials loaded thereon and towed by appellant's tug under the towage agreement were the "property" of the cement corporation. Such towage was the transportation of property. As we view the contracts the performance of the towage contract was the obligation of the appellant and its compensation was received by virtue of its engagement in the business of transporting property for hire. Under the terms of the contract, and the means and method of operations thereunder the arrangement did not evidence a transportation by the cement corporation. The terms of the contract and the method of operation thereunder require the conclusion that the appellant was in fact furnishing transportation to the cement corporation, whose payments to it were taxed, and did not merely lease or charter a tug. For the consideration paid appellant furnished the tug and crew and performed the towing service. While the cement corporation furnished the sailing directions, the master of the tug was at all times an employee of appellant and was responsible for the detailed navigation of the tug. Appellant was liable for any damages or injuries inflicted in operating the tug and was also responsible for any injuries sustained by members of

the crew of the tug and/or tow. A different result is not required because of the fact that the amount paid for the towage services was fixed at a daily rate, and was to be paid whether the tug and its crew were used on a particular day or not. The statute is not concerned with the method used to compute the amount of the payment. Such amount, however it may be computed, is taxable, if, in legal effect, it is paid for transportation. The obvious purpose of the agreement to pay whether or not the tug was engaged in the towing operation on a particular day was to insure the availability of the tug at all times when towage might be desired.

The contracts in question were contracts for transportation of property for hire and the compensation paid therefor was taxable. We have considered appellant's contention that the Lone Star Cement Corporation, by virtue of the contract, became owner of the tug, *pro hac vice*, under admiralty law, but find it without merit. The judgment of the trial Court is affirmed.