348 F.2d 138
 ASSOCIATED DRY GOODS CORPORATION, J. N. ADAM & CO, DIVISION, Plaintiff-Appellee,
v.
UNITED STATES of America, Defendant-Appellant.
ASSOCIATED DRY GOODS CORPORATION, the WILLIAM HENGERER COMPANY DIVISION, Plaintiff-Appellee,
v.
UNITED STATES of America, Defendant-Appellant.
L. L. BERGER, INC., Plaintiff-Appellee,
v.
UNITED STATES of America, Defendant-Appellant.
ADAM, MELDRUM & ANDERSON CO., Inc., Plaintiff-Appellee,
v.
UNITED STATES of America, Defendant-Appellant.
HENS & KELLY, INC., Plaintiff-Appellee,
v.
UNITED STATES of America, Defendant-Appellant.
 Nos. 459-463.
 Dockets 29512-29516.
 United States Court of Appeals Second Circuit.
 Argued May 25, 1965.
 Decided June 29, 1965.
 
 Donald J. Holzman, Buffalo, N. Y. (Jaeckle, Fleischmann, Kelly, Swart & Augspurger, Buffalo, N. Y., on the brief), for plaintiffs-appellees.
 Alec A. Pandaleon, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Gilbert E. Andrews, Attys., Dept. of Justice, Washington, D. C., and John T. Curtin, U. S. Atty., for Western Dist. of N. Y., on the brief), for defendant-appellant.
 Before LUMBARD, Chief Judge, and SMITH and KAUFMAN, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge.
 
 
 1
 Five Buffalo retail department stores, shareholders in Downtown Merchants Delivery, Inc., recovered in the United States District Court for the Western District of New York, John O. Henderson, District Judge, judgments against the United States for refund of excise taxes levied for the period January 1, 1958 to June 30, 1958 under IRC 1954, Sec. 4271(a) and (d),[1] on amounts paid Downtown Merchants Delivery for transportation of property, on the ground that the payments were exempt under Sec. 4272(a)[2] which makes the excise tax inapplicable where, as the District Court found in this case, the payee is not engaged in the business of transporting property for hire. We hold that Downtown Merchants Delivery was so engaged, and reverse the judgments.
 
 
 2
 Downtown Merchants Delivery, Inc. was created in 1940 by seven Buffalo department stores for the purpose of providing a common delivery service for all the merchandise which they sold. At that time, it was agreed that each member store would subscribe for stock in proportion to its then delivery requirements, that no store was to control a majority of the Board of Directors, that a central delivery terminal as well as delivery equipment would be acquired, that an independent delivery manager would be selected to conduct the affairs of the company, and that each store would execute identical delivery contracts with the company. Furthermore, it was decided that in determining the cost of delivery, in addition to all other costs an amount of 6% per annum of the total amount of invested capital was to be charged against each store according and in proportion to the number of packages delivered for each store and a credit of this same amount would be made therefrom to each store on the capital invested by it to compensate for a disproportionate increase in the number of packages delivered for any one store. In practice, furniture stamps and package stamps are issued to the member stores twice a month. These stamps have values assigned to them based on the prior year's actual cost of operation of each division (the delivery company has two divisions, i. e., furniture and package divisions), and the money received for the stamps pays for the company's cost of operation. At the end of each month, the actual cost of operation is determined and each store is either charged or credited with the difference. At the end of each year adjustments are made for the annual period. The result is that the company never shows either a book loss or a book profit since the 6% return on capital invested is carried as an expense, and its operating expenses are paid for by the member stores solely in proportion to the amount of usage by each.
 
 
 3
 In Bridge Auto Renting Corp. v. Pedrick, 2 Cir., 174 F.2d 733 (1949), this court posed the question under the statute as follows: "Did the appellant in fact furnish substantially all of the facilities for, and perform substantially all of the functions of, transporting the property of the forty-two customers whose payments to it were taxed?" Finding that the appellant was subject to the tax where it furnished to its customers trucks staffed with its own drivers, the court observed that "these customers, regardless of what else they saw fit to do, had only to provide the goods for transport, direct the drivers where to take them and pay the appellant for performing the transportation service." Thus, while independence of operation is an acceptable criterion in determining whether the taxpayer is engaged in transportation for hire, the establishment of profit or loss is not an essential element. In Edward Hines Lumber Co. v. United States, 239 F.2d 488 (7 Cir. 1957), the court construed Bridge Auto as turning on the extent of services performed by the carrier for its customers and accordingly held the plaintiff there was subject to the tax because the carriers performed all the services associated with independent carriers. Similarly, the court in Gulf Coast Towing Co. v. United States, 196 F.2d 944 (5 Cir. 1952), held that a barge towing company that contracted with its customer to furnish tug, tow and crew and pay all expenses was subject to the tax. In rejecting the taxpayer's argument based on the method of compensation under the contract, the court stated that the "statute is not concerned with the method used to compute the amount of the payment." Id. at 947. The Court of Claims in John J. Casale, Inc. v. United States, 86 F.Supp. 167, 114 Ct.Cl. 599 (1949), reached the same conclusion as this court on the same type of fact situation as in Bridge Auto. "The taxing statute," said the court, "is not concerned with the form of the arrangements if the substance of the agreements or arrangements between the parties, when considered as a whole, add up to the transportation by one person of the property of another for hire * * *." Id. at 168.[3]
 
 
 4
 Here, the conclusion is inescapable that the delivery company is an independent carrier transporting the property of another for hire. The fact that its income is dependent on the amount of usage by the member department stores and that it never shows a book profit or a loss is of no consequence. What is of importance is that it operates as a separate entity and could not function effectively in any other form — seven competing department stores operating in the same locale could hardly provide a common delivery system unless the delivery company functioned entirely separate from each and every store. Here, the undisputed facts showed that: (1) no store has a majority of the board of directors; (2) the delivery company has its own separate terminal; (3) the company purchases its own equipment; (4) a separate corporation was formed; (5) an independent delivery manager conducts its operations; (6) the company hires and fires its own drivers; (7) before credits are worked out for a particular month or year the company can show a temporary profit for that period; (8) the company assumes the risk of loss in the case of jewelry and furs where value is stated; (9) 6% return is earned and paid on its invested capital.
 
 
 5
 This is quite different from a situation where one store performs the delivery segment of its entire merchandising function through a division or delivery subsidiary. We hold that Downtown Merchants was engaged in the business of transporting the property of the member stores for hire, that their payments were subject to the transportation tax then in effect, and reverse the judgment in each case on appeal.
 
 
 
 Notes:
 
 
 [1]
 § 4271. Imposition of tax
 (a) Property other than coal. — There is hereby imposed upon the amount paid within or without the United States for the transportation of property, except coal, by rail, motor vehicle, water, or air from one point in the United States to another, a tax equal to 3 percent of the amount so paid.
 * * * * *
 (d) By whom paid. — The taxes imposed by this section shall be paid by the person making the payment subject to the tax.
 (Repealed June 30, 1958. 72 Stat. 260)
 
 
 [2]
 § 4272. Exemptions
 (a) Not in business for hire. — The tax imposed under section 4271 shall apply only to amounts paid to a person engaged in the business of transporting property for hire, including amounts paid to a freight forwarder, express company, or similar person, but not including amounts paid by a freight forwarder, express company, or similar person for transportation with respect to which a tax has previously been paid under such section.
 
 
 [3]
 In Masonite Corp. v. Fly, 194 F.2d 257 (5 Cir. 1952) cited by the taxpayers, the tax was held inapplicable to a corporation because it was engaged primarily in the loading business rather than in transportation for hire. And Rev. Rul. 55-752 (1955-2 C.B. 466) held that the tax was not to be imposed on the members of a marketing cooperative association incidentally engaged in trucking. In the latter situation, moreover, the cooperative venture included marketing as well as trucking, whereas here the marketing was done independently by the five department stores