CONSOLIDATED ENGINEERING COMPANY, Inc., a body corporate,

v.

UNITED STATES of America.

Civ. A. No. 12855.

United States District Court
D. Maryland,
Civil Division.

Feb. 8, 1962.

J. Cookman Boyd, Jr., Henry M. Decker, Jr., Baltimore, for petitioner.

Jos. D. Tydings, U. S. Atty., John R. Hargrove, Asst. U. S. Atty., Baltimore, Md., Eugene Emerson, Atty., Tax Div., Dept. of Justice, Washington, for respondent.

**829**

CHESNUT, District Judge.

The question in this case is whether the plaintiff, Consolidated Engineering Company, Inc., a Maryland corporation, is liable for the 3% transportation tax assessed by 26 U.S.C.A. § 4271, on account of the transactions hereinafter described. The transportation tax was repealed in 1958 but the transactions here involved occurred in 1956–57.

In 1958 the Commissioner of Internal Revenue assessed taxes in the amount of $695.50 on the plaintiff. It denied liability and after conferences with the officials of the Internal Revenue Bureau, the imposition of the tax was finally approved by the Bureau and was thereafter promptly paid by the plaintiff which filed a petition for refund, except as to one item of $74.60, and which was in due course denied, and this suit was instituted by the plaintiff to recover the whole amount so paid less the admitted item which was wholly unrelated to the transaction on which the tax was based. There is no procedural question in issue and there is no evidence, and indeed no suggestion, that the taxpayer was in any way attempting to evade the proper tax.

It appears from the evidence that in 1956 the plaintiff *bought* a certain quantity of building materials from a seller named Dawson Groom, Inc., a local Maryland corporation, at a stated unit price, including delivery of the material at the job site at or near Union Bridge, Maryland, where the plaintiff was constructing a large cement plant building for the Lehigh Portland Cement Co. The seller duly delivered the materials from time to time as directed, in a particular quantity at a time, at the job site.

The Government contends that although the seller was obliged to deliver the goods at the job site, to do so it had to transport the material from where it was in turn bought by the seller, for some miles to the job site. The seller rendered invoices for quantities delivered from time to time which were duly paid for by the purchaser, and did not include in the invoices any allocated or separate charge for transportation. The buyer

contends that it had no concern whatever with the carriage of the goods nor did it know, or had any reason to believe, that there was or would be a transportation tax, and that as the contract for purchase was in writing at a unit price for the material delivered to it, there was no tax properly assessed against it. On the whole evidence in the case I find the material facts to be as follows; stated chronologically as far as possible.

1. The Consolidated Engineering Company has been engaged in large construction work in Baltimore City and elsewhere for about fifty years. It is a well known enterprise and has constructed many large buildings in Baltimore City and in other States. It has had for some years an average gross income of about $20,000,000.

2. Prior to 1956 it entered into a contract to erect for the Lehigh Portland Cement Co. a cement plant at Union Bridge, Maryland, at a cost of about $15,000,000. or more. Thereafter, as customarily, happens in such matters, it entered into various subcontracts or purchase orders or agreements with material men to supply various portions of the material needed in the construction of the plant. Among the latter was the contract for the purchase of a certain quantity of stone and sand from the Dawson Groom Company at a stated unit price per quantity delivered at the job site. Before making the agreement with the Dawson Groom Company for stone and sand, it naturally made inquiry as to where stone suitable to meet its contract specifications could be procured, and learned that about 8 miles away from the job site there was a stone quarry which might be able to furnish the required grade of stone (Md.No. 2) to meet the specifications. It inquired from that quarry company whether the latter could and would sell the quantity of stone desired but was informed that the quarry did not sell directly to purchasers but only indirectly to "dealers". Thereupon Consolidated asked for a list of "dealers" from whom suitable stone could be purchased. The quarry gave a list of five or six different named "dealers" and Consolidated then invited bids from these several dealers and after receiving and considering them, awarded the purchase order to Dawson Groom Company which was the lowest bidder offering to supply the required kind of stone and sand for a unit price delivered at the job site. Exhibits 1 and 2 are typical of all such purchases and deliveries in this case. Invoices for the deliveries as made and at the agreed upon purchase price therefor, were rendered by the seller and paid for by the buyer. The invoices did not include any separate or additional item for the transportation involved.

3. Some time in 1957 after the conclusion of the contractual arrangements between buyer and seller, a Field Agent of the Internal Revenue Department visited the offices of Dawson Groom Co., made some examination of its books and apparently made a recommendation that the transportation tax should be assessed against the Dawson Groom Company for such part of the total sales as was determined allocable to the whole purchase price. Apparently this report was approved by higher authority in the Internal Revenue Department and shortly thereafter the same or another Field Agent called to see Dawson Groom Company and after some conferences with one or more of its officers, informed the latter that it should have made a computation of some portion of the total sales prices attributable to the service for transportation and delivery to the job site; and then and there the Field Agent made what he considered a proper allocation of that portion of the purchase price which he thought should be a transportation tax and instructed and directed the officer of Dawson Groom to forthwith make up an additional invoice for the transportation tax so computed and deliver it to the Consolidated. On receipt of this latter invoice an authorized officer of the Consolidated promptly communicated by telephone and later by letter to the Dawson Groom Company denying any liability for such a tax and saying: "At the time, we issued our pur-

chase order, it was understood that we were to pay $2.15 per ton delivered at the job site (less discount) and that no transportation tax was involved as you would be exempt in delivery of your own materials".

Counsel for the United States also stated that prior to the assessment against the Consolidated, the Internal Revenue Department had assessed a tax against the Dawson Groom Company, but later had abated it because considered erroneous on the basis of the Commissioner's contention that the tax was properly assessable to the Consolidated.

■ 4. The transportation tax of 26 U.S.C.A. § 4271, was first enacted as a war revenue measure during the 2nd World War in 1942. Mr. Bonsal, an executive and as assistant treasurer of Consolidated, testified that he had been employed by the Consolidated for more than 15 years and that the Company had never been asked to pay, or charged with payment or assessed, for a transportation tax in any transaction similar to the one here mentioned. It would seem to be clearly within the general knowledge with respect to building transactions of this character that there naturally must have been hundreds, if not thousands, of purchases of material by contractors such as Consolidated for the erection of large buildings.

5. It will be noted that the amount of the tax assessed to Consolidated was made by the Field Agent on the basis of his assumption that the sum taken as a basis for the computation of the tax was the whole difference between the assumed cost of the purchase of the material by Dawson Groom when subtracted from the total aggregate sums paid by Consolidated. This allocation was made separately with regard to stone and sand. In making this computation no account of the considerable item of 5% discount was taken or any element of profit by the seller on his contract of sale. It does not appear from the evidence in the case that the computation of proper charge for transportation was based on mileage of material transported with respect to stone and sand separately considered.

It may be inferable, although not clearly established by the evidence, that Dawson Groom bought the stone at a stated selling price from the quarry about 8 miles away, but it does not clearly appear where Dawson Groom bought or obtained the sand. It does, however, clearly enough appear from the evidence that in making delivery at a flat charge for stone and sand, Dawson Groom itself made no separate computation for the various items of its obligation to fulfill its contract and did not voluntarily (except by direction of the Field Agent) render any invoices therefor. Nor was there any evidence to show that in agreeing to a unit price Dawson Groom made any calculation with respect to its cost to be attributed to delivery as distinct from purchase price. The principal owner and executive officer for Dawson Groom Company was Mr. Groom himself who, with his wife, owned the business. Counsel for the Government stated that he was unfortunately not able to bring in Mr. Groom as a witness because he was reported to be ill at the time. He did, however, call as a witness a Mr. Baugher who had the title of Assistant Secretary of Dawson Groom, but from his testimony seemed to be a general foreman for the business. The latter did not in any way participate in the making of the contract for the sale and delivery of the materials to Consolidated; and himself knew of no particular sum, if any, which had entered into the fixing of the unit price for the sale. He did testify that at the time of the deliveries Dawson Groom was engaged (1) partly in the business of transporting goods for hire to separate shippers and (2) for the hiring of construction equipment, trucks, shovels, etc., used by other persons and (3) in the general purchase and sale of supplies for building contractors or others. There was no percentage showing the relation of one portion of the business to the other. There was no affirmative evidence as to the purchase price paid by Dawson Groom for stone and sand respectively. It is

possible, although not evidentiarily clear, that the Field Agent estimated or found the cost of purchasing material from his examination of the books of Dawson Groom. It is stated by counsel that these books had been subpoenaed but they were not offered in evidence. Nor did the Field Agent who made the computation testify in the case. One Field Agent did testify but he was apparently a different individual from the one who had made the computation. Plaintiff's Ex. 5 and 6 were offered in connection with the computation referred to.

Section 4273 of title 26 U.S.C.A., requires carriers of merchandise for hire to register with the Secretary or his Deputy (presumably the District Director) his name and place of business and the regulations (C.F.R.1949 ed. title 26, ss. 143.50 through 143.54) requiring the carrier to collect, record, make returns and pay taxes. Counsel stated without contradiction that Dawson Groom did properly register; but there is no evidence that it either recorded or reported taxes collected or charged for transportation of the merchandise it sold and delivered to Consolidated.

Turning now to the applicable law of the case, the statute, section 4271 and any of its subdivisions here applicable provides as follows:

"Imposition of tax: (a) Property other than coal.—There is hereby imposed upon the *amount paid* within or without the United States for the transportation of property, except coal, by rail, motor vehicle, water, or air from one point in the United States to another, a tax equal to three percent. of the amount so paid. * * * (d) By whom paid.—The taxes imposed by this section shall be paid by the *person making the payment subject to the tax.*" (Italics supplied).

Counsel have referred the court to various Regulations containing definitions of the terms used in the Act. See Code Fed.Regulations, 1949 ed. title 26, Part 143, s. 143.1. Counsel have also called my attention to various rulings made by the Internal Revenue Department in general reference to the application of the taxing statute. I have read and endeavored to carefully consider all of these regulations and rulings but do not find that they are of any material difference from or helped in applying the statute to the facts as found in this case. Some of them which may be thought to have some particular bearing on the application of the statute to the facts of this case are further noted in a note in the margin.[1]

Counsel on both sides have referred me to a number of heretofore decided cases, all of which I have examined and a few of which I will refer to and comment on; but counsel on both sides agree that there is no prior judicial precedent for holding the plaintiff in this case, the Consolidated Company, liable for the transportation tax imposed by the statute, under the facts as above found and recited.

Subsection (a) of section 4272 (implemented by Regulations 143.1 and 143.113, supra) provides who is to be considered a "carrier" and that the tax is imposed on the amount paid for the carriage of the property transported. Subsection (d) provides that the tax is to be paid by the person making the payment. It seems clear, therefore, that the tax is to be calculated on the amount paid for the transportation. In the instant case, under the facts found, there was no amount

---

1. Code of Fed.Reg.1949 ed. ss. 143.1 and 143.113, defines "carrier". As to this, see opinion of the 4th Cir. the Kerns case referred to in the text [Kerns v. United States] 204 F.2d 813. Of the rulings referred to, apparently the most applicable one seems to be Rev.Rul. 54–463, reported in Int.Rev.Cum.Bull. for 1954, p. 424. Briefly stated, it in effect says that where a trucker operating for hire generally buys produce for a particular price and after carrying it sells it for a previously stipulated price which produces for him a profit over and above what would have been his ordinary charge for carriage, the tax is not assessable against the customer who buys the merchandise at the stipulated price upon delivery. This ruling is the one referred to by Consolidated in its letter to the District Director in Baltimore (Plaintiff's Ex. No. 9).

paid by Consolidated for transportation and it is equally clear that no payment for transportation was made by Consolidated when it paid Dawson Groom at unit prices per ton for material delivered according to contract at the job site. Counsel for the Government in this case contends that in its ordinary application the statute, and particularly subsection (d), means that the tax is to be paid by the "shipper"; and further contends that in this case Consolidated was the shipper. I agree that in ordinary application the shipper is to pay the 3% tax to the carrier but I cannot agree, under the facts here stated, that Consolidated was the shipper who, under the wording of the statute, was required to pay the tax. To hold that Consolidated was the shipper seems to me to be quite apart from the ordinary meaning and customary application of words in such general business practice as is shown in the facts here.

While no judicial precedent can be found to support the Government's position in this case, I will now refer to some of the cited cases which may seem to have some application to some phase of this case. The most significant one is the opinion of Chief Judge Parker of the 4th Circuit in the case of Kerns v. United States, 204 F.2d 813. In that case, Kerns, the owner of certain trucks alleged to have been used for transportation within the meaning of the Act, was assessed for a transportation tax. It paid the tax and sued to obtain a refund. The question in the case was whether the truck owners were liable for the transportation tax. The facts found were, briefly stated, as follows: A quarry company engaged Kerns to rent to it, and furnish drivers for, trucks used in carrying stone from one part of the quarry to another. It was held in the opinion that the Trucking Company was not liable for the tax on account of the rental for hire of the trucks in the conduct of the quarry business itself. In discussing the proper construction and application of the statute in the course of the opinion, Judge Parker said:

"The tax was manifestly intended to apply to transportation for hire as that term is generally understood, i. e. such transportation as is authorized by common carriers, freight handlers, express companies, etc., who carry property from one place to another for compensation. * * We think that this is made clear by the language of the statute itself as well as by the language in the regulation interpreting it. Certainly, this interpretation is sustained by the great weight of authority."

In Associated Dry Goods Corporation, etc. v. United States, 194 F.Supp. 67 (1961) Chief Judge Thomsen of this court was dealing with the application of the transportation tax to amounts paid by three well known department stores of Baltimore (Stewart's, Hutzler's and Hochschild, Kohn) to a transportation company known as Delivery of Baltimore. It is a well known business practice of department stores to furnish free delivery service to their customers at prices charged for the merchandise themselves. To minimize costs of delivery the three separate department stores as corporations, transferred their respective delivery equipment to a fourth corporation known as Delivery of Baltimore to handle a certain class of their package deliveries to customers. The three stores paid to Delivery of Baltimore the charges of the latter for the transportation services, in proportion to their respective quantitative use of the Delivery Company for their package goods within the prescribed limits. The question was whether the amounts so respectively paid to the Delivery Company by the three stores were amounts paid by them for transportation. It was held that the amounts so paid constituted transportation charges on which Delivery Company should have properly been paid the respective costs by the three stores separately; but it was further held that there was no proper charge for the transportation tax on package goods handled by Delivery Company not within the specified limits of the joint agreement for payment by the three

companies respectively. There was no suggestion in the case that any part of the transportation charge of Delivery to any of the customers of the three stores was chargeable to the customers. I quite agree with the conclusion in that case under the findings of fact therein stated, but find it furnishes no precedent for the present case where the facts are very different.

In Hines Lumber Co. v. United States, 239 F.2d 488 (7th Cir. 1957), Hines Lumber Company having a mill, engaged and paid charges to a trucking company for the carriage of lumber bought by the Lumber Company from the United States, transported partly over Government roads and public highways to the Lumber Company's mill. The agents, servants and employees of the trucking company were furnished and paid by the trucking company. It was held that the Lumber Company was properly charged with the 3% transportation tax on the amount so paid to the independent trucking company carriers. The Court distinguished the case from the Kerns case, supra, in the 4th Circuit on the differing facts of the two cases. I have no disagreement with the conclusion reached by the 7th Circuit in that case; but find it constitutes no judicial precedent for the instant case by reason of the very different facts.

██ Counsel for the Government offered in evidence an inter-departmental communication from one Department of the Internal Revenue to another, undertaking to review the facts of the case as understood by the writer of the communication and possibly based on a report of the Field Agent above referred to who made the computation for the tax in 1957. This letter, or assumed ruling, objected to by counsel for the plaintiff, is clearly inadmissible as any factual evidence. It assumes an alleged state of facts not supported by any admitted evidence, and the assumptions of fact are substantially inconsistent with the admitted evidence. Counsel for the Government refers to this as a statement of the Commissioner's legal contention. But as the assumed facts are not satisfactorily supported by the evidence, I think it unnecessary, and really irrelevant, to discuss the stated legal contention which would seem to constitute merely a hypothetical proposition.

██ I assume, as is customary in this type of case, the finding by the Commissioner and the making of the assessment, is presumed prima facie to be correct; and the burden of proof is on the plaintiff in claiming a refund to satisfy the court by a preponderance of the evidence that the assessment was invalid. On the facts found, it is my opinion that the Consolidated has fully met the required burden of proof and that the assessment made by the Commissioner is invalid because contrary to the facts so found after hearing the case in court. There is nothing in the facts to show that Consolidated ordered any particular transportation by Dawson Groom; nor from any one place to another. It merely accepted the lowest bid of several different bidders for purchase of specified quantities of building supplies delivered at the job site and for a unit price per ton. It neither actually paid nor agreed to pay any portion of the Dawson Groom bid charge for carriage of the material. In that respect Dawson Groom was acting for itself as a seller of materials and any transportation that it was required to make of the supplies from the place where they were purchased to the job site was a part of its business and its obligation under the contract. And the facts found show that while Dawson Groom had in 1956 a large number of trucks which sometimes were used by it for transportation for hire, it also had as a substantial part of its whole business the rental of those trucks or road equipment to other persons, and even more importantly, it also acted as buyer and seller of materials. In my opinion the stated facts clearly contradict the assumption of the inter-departmental agency letter that the primary business of Dawson in performing its "buy and sell" activities was transportation for compensation. I know of no rule of law nor of general business practice which would justify the

conclusion that where the owner of trucks and road equipment sometimes rented to others for hire and sometimes used in its own business, where it buys at one price and sells for a different price but using its own trucks in transportation and delivery, should be held to be acting in transportation for others for hire rather than merely for itself in fulfilling a written contract to supply materials at a stated place for a stated sum per unit of goods delivered.

Upon consideration of the facts and the applicable law, my conclusion and holding is that the transportation tax against Consolidated as assessed by the Commissioner was invalid and that the plaintiff is entitled to a refund of the tax heretofore paid by it, less, of course, that portion applicable to a wholly different transaction.

Counsel may promptly submit a judgment in accordance with this opinion after jointly agreeing upon the precise amount of recovery, with properly applicable interest thereon.